## MAIER NEUMANN v. THE CALUMET & HECLA MINING COMPANY.

*Finding of facts—Garnishment after assignment of debt—Preferences.*

1. In making a finding of facts a court may not only state all facts directly proved, but may include such as it may establish to its satisfaction by necessary inference.

2. A finding of facts by a trial judge is in the nature of a special verdict, and if supported by evidence is conclusive on review in the Supreme Court.

3. A debt actually due under an existing contract can be verbally assigned with the debtor's assent; and if so assigned in good faith to a creditor of the assignor to protect his claim, the debtor cannot then be charged as garnishee of the assignor.

4. Preferences among creditors are lawful at common·law; and How. Stat. § 8739, which forbids such preferences in making an assignment for the benefit of creditors is in derogation of the common law and cannot be extended to an ordinary assignment to secure a particular creditor.

Error to Houghton. (Williams, J.) April 29.—June 3.

Garnishment proceeding. Plaintiff brings error. Affirmed.

*T. B. Dunstan* for appellant.

*Chandler, Grant & Gray* for intervenors and principal defendant. (*T. L. Chadbourne* for garnishee.)

CHAMPLIN, J. Defendant was garnished by plaintiff as a

debtor to one Xavier Dollinger. The garnishee made disclosure, and a statutory issue was framed, which came on for trial before the court without a jury, who, upon written request for a special finding, found and filed the following written finding of facts and law:

The defendant Dollinger has for several years been engaged in getting out wood, timber, etc., for the Calumet & Hecla Mining Company. In the fall of 1881 he became and was indebted to different parties in different amounts, among others to the parties who intervene here, Joseph Wertin, Joseph Wertin, Jr. and George Wertin; and on the 8th day of October, 1881, the indebtedness to the said Wertins was $20,838.25, they being the principal creditors. The methods of doing business between Dollinger and the Calumet & Hecla Mining Company were as follows: It was agreed between them that said Dollinger was annually to get out wood, timber, material, etc., for the company; that the amount needed and the price for the same was to be determined each year, when a memorandum in writing of such yearly amounts and the terms thereof was to be made. Such arrangement was to continue until either one of the parties desired to discontinue it. This arrangement had been in force for several years, and a further continuance was anticipated by both. At this time the amount needed for the succeeding year had been determined, and Dollinger and the company were about to reduce to writing the arrangement between them for that year. Dollinger needed money or advances. He made arrangements with the Wertins for such money and advances, and executed to them two mortgages, on that date, for the amount named; one a real estate mortgage, the other a personal property mortgage. The indebtedness to the Wertins was for supplies and goods sold, and also largely for indorsements made by them for the benefit of Dollinger in carrying on his business with the Calumet & Hecla Company. Under and by virtue of the arrangements entered into between the Wertins and Dollinger, the Wertins were to advance money to carry on the business of the latter, and the proceeds of the contracts with the Calumet & Hecla Mining Company were to be paid over at once, and belonged to the Wertins. Advances were made by the Wertins, and also further accommodations given by them in the way of indorsements to Dollinger, and all moneys earned by Dollinger upon the contracts with the Calumet & Hecla Mining Company were received by the Wertins, and they did in fact advance

to Dollinger what money he had and needed. In the spring of 1882, another mortgage was made by Dollinger to the Wertins,—a personal property mortgage; the former real estate mortgage remaining, and the new personal property mortgage to take the place of the other; and thereafter the parties proceeded as before. The chattel mortgages were duly filed in the proper office, and have been kept alive continuously by proper renewal affidavits made and filed. The real estate mortgage was duly recorded in the office of the proper register of deeds on the 10th day of October, 1881.

The mortgages are attached as exhibits and made a part of the findings. The chattel mortgage bearing date the 8th day of October, 1881, covered certain personal property then in existence as such, and, in addition thereto, upon all the hay and potatoes, and all wood, stull and other timber to be cut or raised by said Dollinger during the continuance of the mortgage, from any and all lands owned by him. This mortgage further provided that said Dollinger should cut, haul and market the wood and timber so cut and to be cut from said lands, and that all the proceeds of said sales should be immediately turned over to said Wertin & Sons, to be by them applied towards the payment of said indebtedness; and said Wertin & Sons agreed that they would apply all moneys received, first, to the payment of such note or notes mentioned in said mortgage as said Dollinger should direct, and that they, the said Wertins, would wait for the balance due them for merchandise until all of said notes were paid.

The chattel mortgage, bearing date the 5th day of April, 1882, contained the following:

"It is hereby expressly understood and agreed that said Dollinger should cut, haul and market the wood and timber to be cut as hereinabove provided, and that all the proceeds of such sales shall be immediately turned over to said second parties, and shall be by them applied towards the payment of any indebtedness hereunder, absolute or contingent; and said Dollinger hereby agrees that if any moneys shall be collected by him for the sale of any such wood and timber, he will immediately turn the same over to said second parties. It is also expressly understood and agreed that all the hay and potatoes which shall be raised by said Dollinger during

the continuance of this mortgage in force shall be sold, and the proceeds disposed of in the same manner as is herein-above provided for the proceeds of the wood and timber; and that this mortgage is intended to cover all the hay and potatoes which shall be raised by the said first party while this mortgage is in force."

The special finding proceeds:

"In the winters of 1881 and '82, '82 and '83, and '84, Dollinger got out wood and timber for the Calumet & Hecla Mining Company, under memorandums of contracts, copies of which are hereto attached. The Wertins and Dollinger both informed the Calumet & Hecla Mining Company that all moneys earned by Dollinger were to be paid to the Wertins, and that the same belonged to the Wertins. January 16, 1882, the Wertins served upon the Calumet & Hecla Mining Company the notice hereto annexed, marked 'G,' namely:

'HANCOCK, MICH., October 26, 1881.

*Calumet & Hecla Min'g Co., Calumet, Mich.*—GENTLE-MEN: You are hereby notified that all moneys for wood and timber sold to you by Xavier Dollinger belongs to us, by a written agreement made between Mr. Dollinger and our-selves. You will therefore hold all such moneys subject to our order, and pay same to us.

Yours truly,          JOS. WERTIN & SONS.'

The plaintiff, Neumann, before he instituted these proceedings, had full knowledge of what the business relations were between Dollinger and the Wertins and the Calumet & Hecla Mining Company. He had notice that the Wertins claimed to be entitled to the proceeds of the material furnished by Dollinger to the Calumet & Hecla Mining Company, and that the Calumet & Hecla were paying all earnings to the Wertins.

On the 14th day of March, 1884, Neumann instituted these proceedings, and served the papers upon the Calumet & Hecla Mining Company. The company made answer, filed in this case (reference to which is here made), and gave the originals of the chattel mortgages and the real estate mortgage before referred to, disclosing that there was due from the company to Dollinger at the time of the service of the writ, for materials furnished and delivered by Dollinger to the company, the sum of four thousand one hundred and eighty-three dollars and thirty cents, and asked to be advised

to whom the indebtedness belonged ; that it was unable to say whether it belonged to Dollinger or the Wertins. The plaintiff, Neumann, was a creditor of Dollinger at the time the mortgages herein spoken of were made, and he obtained judgment against Dollinger on the 26th day of April, 1882, for $1491.46 damages, and $22.50 costs. The indebtedness from Dollinger to the Wertins, in consequence of the arrangement entered into between them, has been continually reduced. The object of the mortgages was not to defraud any one, but was in fact to enable the Wertins to realize the amount due them from Dollinger, and their further advances were the better to promote that object. The purpose of the Wertins was to secure themselves, and they took the course they did, deeming it the most feasible, and without the intent in fact to defraud any one. At the time of the service of the writ in this case upon the Calumet & Hecla Mining Company, Dollinger was indebted to the Wertins in the full amount disclosed by the company, as being due for materials furnished by Dollinger. Under these facts I find, as a matter of law, that the money due from the Calumet & Hecla Mining Company, for the material delivered to it by Dollinger, belonged to the Wertins; that if the Calumet & Hecla Mining Company had paid it to the Wertins, even Dollinger could have made no complaint, and could have maintained no suit against the Calumet & Hecla for it ; that under the agreement between the Wertins and Dollinger the money was, in fact, the money of Wertin & Sons, as far as earned; that there was no fraud in law in the mortgages given by Dollinger to the Wertins."

To which said finding of the said court the counsel for the plaintiff in due season duly excepted, and presented the following amendments to the same on the facts and the law, which amendments the circuit judge refused to incorporate into said finding, to wit :

(1) That at the time said first mortgages were made, and ever since then, Dollinger was indebted to said Neumann in the sum of thirteen hundred dollars and upward, for which indebtedness said Neumann obtained a judgment against said Dollinger in this court, on the 26th day of April, 1882, for fourteen hundred and ninety-one dollars and forty-six cents damages, and twenty-two dollars and fifty cents costs of suit, which judgment is now in full force and is now due, with interest, to said Neumann.

(2) That said three mortgages covered all the property, real and personal, owned by the said Dollinger at the time of their execution, and that at the date of the execution of the last mortgage said Dollinger owned no property of any description, except what was included in said mortgages.

(3) That at the time said mortgages were executed, and as part of the transaction, it was understood and agreed between Dollinger and the Wertins that the latter should receive all the avails of Dollinger's business and property, and should furnish Dollinger all the money he needed for the support of himself and family while the arrangement aforesaid subsisted. That this arrangement was in fact carried out; the Wertins, from time to time, furnishing Dollinger such moneys, and receiving all such avails.

(4) That this agreement and transfer were made in trust for the benefit of Dollinger, and were void as against Neumann, his creditor.

(5) That this agreement and these mortgages so made were made with the intent to hinder and delay Dollinger's creditors of their lawful debts and demands, and hinder and delay the plaintiff Neumann of his lawful demand, and are, as to him, void."

The plaintiff then filed exceptions to the findings as follows:

" That the said circuit judge erred in not finding from the evidence the following, namely :

(1) That at the time said first mortgages were made, and ever since then, said Dollinger was indebted to said Neumann in the sum of thirteen hundred dollars and upward, for which indebtedness said Neumann obtained a judgment against said Dollinger, in this court, on the 26th day of April, 1882, for fourteen hundred and ninety-one dollars and forty-six cents damages, and twenty-two dollars and fifty cents costs of suit, which judgment is now in full force, and is now due, with interest, to said Neumann.

(2) That said three mortgages covered all the property, real and personal, owned by said Dollinger at the time of their execution, and that at the date of the execution of the last mortgage said Dollinger owned no property of any description, except what was included in said mortgages.

(3) That at the time said mortgages were executed, and as part of the transaction, it was understood and agreed between Dollinger and the Wertins that the latter should receive all the avails of Dollinger's business and property, and should furnish Dollinger all the money he needed for the support of

himself and family while the arrangement aforesaid subsisted ; that this arrangement was in fact carried out,—the Wertins, from time to time, furnishing Dollinger such moneys and receiving all such avails.

(4) That this agreement and transfer were made in trust for the benefit of Dollinger, and were void, as against Neumann, his creditor.

(5) That this agreement and these mortgages so made, were made with the intent to hinder and delay Dollinger's creditors of their lawful debts and demands, and did hinder and delay the plaintiff, Neumann, of his lawful demand, and are, as to him, void.

" That the said circuit judge erred in finding the following facts found by him, namely :

(1) It was agreed between them that said Dollinger was annually to get out wood, timber, materials, etc., for the company.

(2) Such arrangement was to continue until either one of the parties desired to discontinue it.    This arrangement had been in force for several years, and a further continuance was anticipated by both.

(3) The indebtedness of Dollinger to the Wertins, in consequence of the arrangement entered into between them, has been continually reduced.

(4) The object of the mortgages was not to defraud any one, but was in fact to enable the Wertins to realize the amount due them from Dollinger, and the other further advances were the better to promote that object.

(5) The purpose of the Wertins was to secure themselves, and they took the course they did, deeming it the most feasible, and without the intent in fact to defraud any one.

And that the said circuit judge erred in finding the propositions of law, and each of them, and also in ordering judgment for the defendant."

The real parties to this suit are the plaintiff and the Wertins, who intervened upon the trial and have brought forward their proofs to establish their right to the indebtedness garnished.    The evidence is all returned in the record before us, and we think the facts stated in the first, second and third requests of plaintiff to find were established by the evidence, and will be treated here as having been found by the court. The fourth and fifth requests to find were propositions of law, and will be considered when we come to that branch of the case.

The findings of facts excepted to as not being supported by the evidence, we think were supported by the evidence in the case. The court in finding facts is at liberty, not only to embrace therein all facts directly proved, but it is its province to draw all necessary inferences from the evidence which establishes the existence of facts to its satisfaction, and includes such facts in its finding. The wood delivered by Dollinger to the Calumet & Hecla Mining Company was under contracts made in November in each year, the memoranda of which, entered in the contract-book of the company and referred to in the finding, are as follows :

" Memo' of contract, entered in Mr. Duncan's contract-book, under date November, 1881.

Xavier Dollinger to deliver in wood-yard at Torch Lake, during the winter of 1881 and summer of 1882, 90 per cent. to be good hard wood and 10 per cent. to be good body maple, 4000 cords, all to be 4 feet long. For wood delivered in winter, to be $3.37½ per cord; delivered in summer, to be $3.50 per cord.

Copy of memo' of contract, entered in Mr. Duncan's contract-book, under date of November, 1882.

Xavier Dollinger to deliver in wood-yard at Torch Lake, during the winter of 1882 and the summer of 1883, 3000 cords of wood, 90 per cent. to be hard wood and 10 per cent. soft wood, all to be 4 ft. long. Wood delivered in winter, $3.37½ per cord ; and wood delivered in summer, $3.50 per cord.

Copy of memo' of contract, entered in contract-book under date of November, 1883. ·

Xavier Dollinger to deliver in wood-yard at Torch Lake, during winter of 1883 and summer of 1884, 3000· cords of 4-ft. wood, 90 per cent. to be good hard wood and 10 per cent. to be good body hemlock. Wood delivered in winter will be $3.37½ ; wood delivered in summer will be $3.50 per cord."

The findings of facts by the circuit judge are in the nature of a special verdict and conclusive in this Court, if there is evidence to support them. *Tillman v. Fuller* 13 Mich. 113 ; *Lovell v. Willard* 28 Mich. 346 ; *Shotwell v. Harrison* 30 Mich. 179 ; *Hubbardston Lumber Co. v. Bates* 31 Mich.

158; *Todd v. Davis* 32 Mich. 160; *Kling v. Fries* 33 Mich.
275; *Tower v. Detroit, L. & L. M. R Co.* 34 Mich. 328;
*Thatcher v. St. Andrew's Church* 37 Mich. 264; *Clapp v.
Born* 41 Mich. 152; *O'Connor v. Beckwith* 41 Mich. 657;
*Mitchell v. Chambers* 43 Mich. 150; *Johnson v. Crispell* 43
Mich. 261; *Farrington v. Sexton* 43 Mich. 454; *Green v.
Gill* 47 Mich. 86; *Mower's Appeal* 48 Mich. 441; *Kundin-
ger v. Detroit, &c. Ry. Co.* 51 Mich. 185; *Edwards v. Nel-
son* 51 Mich. 121.

The only question open upon this record is whether the
conclusions of law found by the court are the proper results
of the facts found.    The plaintiff insists that the law arising
upon the facts shows that the transfers and agreement con-
stituted a trust for the benefit of Dollinger, and were void
as against Neumann, his creditor, and that they were made
with intent to hinder and delay Dollinger's creditors of their
lawful debts and demands, and did have that effect as to
Neumann, and as to him are void.

That the debt to Wertin & Sons, secured by the mort-
gages and agreement, was bona fide, there is no doubt; and
it expressly found as a fact that the money in the hands of
the mining company belonged under the agreement between
Dollinger and the Wertins, to the latter.    The argument of
plaintiff's counsel ignores this fact, and assumes that the
money garnished was not past indebtedness but future earn-
ings; that it was not an existing indebtedness from the pro-
ceeds of wood delivered, but an indebtedness yet to accrue
under the contract, and he seeks to apply the doctrine
that a mere possibility of future indebtedness, without any
subsisting engagement upon which it shall accrue, cannot be
assigned; citing, in support thereof, Drake on Attachment
(4th ed.) § 613; *Mulhall v. Quinn* 1 Gray 105; Jones on
Chat. Mortg. (2d ed.) § 144.

But the authorities cited do not apply to the facts of this
case.    Thus Mr. Drake lays down the rule that a debt to
become afterwards due may be assigned, but it is necessary
that at the date of the assignment the contract out of which
it is to grow should have some existence.    A mere possibil-

ity of future indebtedness, without any subsisting engagement upon which it shall accrue, cannot be assigned. The debt may be conditional, uncertain as to amount, or contingent; but to be the subject of an assignment there must be an actual or possible debt due or to become due. Here, at the date of the writ of garnishment, the debt was actually due, and arose out of an existing contract, and as found by the court belonged to the Wertins. The case cited from 1 Gray 105, was one of *unearned wages*, without any definite contract for service. Here the indebtedness is not for wages, but for wood sold and delivered. The section referred to from Jones on Chattel Mortgages relates to future wages or earnings. The debt from the mining company to Dollinger was not evidenced by writing, and could be and was verbally assigned to the Wertins. It is said in Drake on Attachments § 614, that where such verbal assent is given by the debtor, the assignment becomes complete, and the debtor is bound to pay the assignee, and he consequently cannot be charged as garnishee of the assignor. It is expressly found that there was no fraud in fact in the transaction, and we do not perceive any fraud in law. The Wertins agreed to make advances, not only to enable Dollinger to carry on his job, but for the purposes of supporting his family in the meantime and such expenses as he should necessarily incur. To secure them for such advances, and pay his indebtedness to them, Dollinger gave the mortgage security, and assigned the indebtedness from the company to him to the Wertins. The arrangement doubtless serves to prefer the Wertins over the other crediters of Dollinger, but such preferences are lawful at the common law, and in this State are only forbidden when the debtor makes a common-law assignment for the benefit of his creditors. That statute, being in derogation of the common law, will not be extended to embrace cases not within its terms, and in the absence of an assignment upon which to operate has no effect.

The judgment of the circuit court is affirmed.

The other Justices concurred.