Ralph I. SELBY, Trustee for the Frimberger Corporation, Plaintiff,

v.

FORD MOTOR COMPANY, a Delaware Corporation, et al., Defendants.

Civ. A. No. 4–71625.

United States District Court, E. D. Michigan, S. D.

Dec. 9, 1975.

**166**

Frederick W. Heath, Shea, Shea & Heath, Birmingham, Mich., for plaintiff.

Douglas E. Cutler and Keith C. Hennessee, Dearborn, Mich., for Ford Motor Co.

Sidney L. Frank and Gary A. Goldberg, Keywell & Rosenfeld, Birmingham, Mich., for Clark Equipment Co.

Howard A. Serlin, Dahlberg, Mallender & Gawne, Detroit, Mich., for Westfield Sheet Metal Works and Johansen Co.

Robert G. Rooyakker, Troy, Mich., for Elbee, Inc.

Donald C. Morgan, Kerr, Wattles & Russell, Detroit, Mich., for Webster Manufacturing, Inc.

Charles E. Keller and David E. Kempner, Keller, Thoma, Toppin & Schwarze, Detroit, Mich., for Unified Industries, Inc.

Barry R. Bess, Law Offices of Irwin Jay Deutch, Detroit, Mich., for Production Industries, Inc.

Ronald L. Rose, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for D. O. James Gear Mfg. Co.

Harold O. Love, Love, Snyder & Watson, Harper Woods, Mich., for J. I. C. Electric, Inc.

B. Kingsley Buhl, Dickinson, Wright, McKean & Cudlip, Detroit, Mich., for Ferguson Iron Works.

Alexander C. Perinoff, Southfield, Mich., for Chain Supply Co.

Andrew J. Broder, Bodman, Longley, Bogle, Armstrong & Dahling, Detroit, Mich., for Applied Handling, Inc. and Brotherton Construction.

Carl F. Erickson, Berkey & Erickson, Bloomfield Hills, Mich., for American Crane & Conveyor Co., Inc.

Gary Pollack, Hamborsky & Pierce, Detroit, Mich., for D. P. Brown of Saginaw.

## OPINION AND ORDER

JOINER, District Judge.

This is a plenary action initiated under section 60 of the Bankruptcy Act, 11 U.S.C. § 96. Plaintiff, trustee in bankruptcy of the Frimberger Corporation (Frimberger), seeks recovery against Ford Motor Company (Ford), a debtor of the bankrupt, and sixteen creditors of the bankrupt for receipt of alleged preferential transfers of property made by the bankrupt within four months of bankruptcy. The action arises out of Ford's contract obligation to pay Frimberger for services rendered as a general contractor on a project at a Ford assembly plant. In lieu of final contract payments due, Frimberger authorized Ford to pay directly certain of Frimberger's unpaid subcontractors, defendants in this case. Frimberger's trustee now seeks recovery of these payments as voidable preferences. Jurisdiction is proper under 11 U.S.C. § 96.

All defendants have filed motions to dismiss or in the alternative for summary judgment which raise these common issues: (1) whether the trustee's suit is barred by the applicable statute of limitations; (2) whether Frimberger, Ford's contractor, by authorizing Ford more than four months before bankruptcy to make contract payments directly to unpaid subcontractors from funds owed Frimberger by Ford, thereby perfected a transfer of its right to payment from Ford which now prohibits the trustee from recovering those payments as preferences; and (3) whether the Michigan Builder's Trust Fund Act, M.C.L.A. 570.152, impressed a trust upon certain of these payments which excludes them from the bankrupt's estate and prevents the trustee from recovering them as preferences. The parties have stipulated to the material facts, summarized below.

In the spring of 1970, Frimberger contracted with Ford to construct and install conveyors for Ford's Metuchen, New Jersey, Assembly Plant. Ford's contract required Frimberger to furnish partial waivers of liens from Frimberger and various subcontractors on the project covering completed work for which payment was made. Ford made contract payments to Frimberger through mid-August, 1970; Frimberger and the subcontractors continued and completed work on the project some time in September or October, 1970.

At this time, Ford owed Frimberger $355,090.99 under the contract but withheld payment of this amount pending receipt of final waivers of liens from Frimberger and the subcontractors. Many subcontractors advised Ford in late 1970 that they had not been paid in full by Frimberger and requested Ford to make payment to them directly or to assist them in securing payment from Frimberger. Ford contacted Frimberger and requested that Frimberger pay the bills involved.

On December 8, 1970, Frimberger executed a written authorization permitting Ford to pay directly the following defendant subcontractors:

Applied Handling, Inc.
Chain Supply Co.
Elbee, Inc.
Ferguson Iron Works
J.I.C. Electric, Inc.
D. O. James Gear Co.
Production Industries, Inc.
Unified Industries, Inc.
Webster Manufacturing, Inc.

This authorization declared that the payments would be, to the extent paid,

in complete satisfaction of any liability Ford had to Frimberger on the Metuchen contract. Frimberger executed a similar authorization on December 15, 1970 directing that payment be made to defendants Johansen Company, Brotherton Construction, Westfield Sheet Metal Works, and Clark Equipment Company (Clark).

Neither the December 8th nor 15th authorizations stated when Ford was to pay the subcontractors. However, Frimberger's records showed that invoices and other records from the subcontractors covered by these authorizations were marked either "paid" or "paid by Ford Motor Co. 12–15–70" or "Consider paid on 12–15–70" or in similar terms. Frimberger posted its ledger sheet for the Metuchen contract to reflect the amounts authorized for direct payment as credits to Ford's account, crediting Ford with regard to both authorizations by December 16, 1970.

Ford wrote the affected subcontractors, informing them of Frimberger's authorizations and requesting execution of final waivers of liens as a condition of payment by Ford. By January 15, 1971, all subcontractors subject to the December 8th and 15th authorizations had executed waivers of liens.

Between January 4 and January 14, 1971, Ford and Frimberger made a final settlement of accounts on the Metuchen contract. On January 14, 1971, Frimberger executed a release and indemnification agreement in accordance with the settlement. The terms of the settlement indicated that Frimberger was to receive from Ford $98,575.27 on the contract, that is, the original amount outstanding, $355,090.99, less the amounts subject to the December 1970 authorizations. In addition, the settlement reflected that Frimberger had authorized Ford to pay directly two additional defendant subcontractors, Amcon Industries (American Crane and Conveyor) and Davis & Averill, Inc. The settlement also indicated that Frimberger had authorized Ford to pay defendant Elbee

an additional amount not reflected in the December 8th authorization.

On January 27, 1971, Frimberger executed a written authorization identical to the December 1970 authorizations, permitting payment to, among others, defendants D. P. Brown of Saginaw (Brown), American Crane & Conveyor, an additional amount claimed by Clark, and the additional amount owing to Elbee. This authorization merely confirmed what had been previously agreed upon in prior written authorizations and conversations and confirmed in the release and indemnification agreement except as to Clark's additional claim and the claim of Brown. As to Clark's additional claim, the January 27, 1971, authorization constituted Frimberger's first written approval of that claim. Brown had not been included in previous discussions or authorizations of direct payments and Ford declined to make direct payment to that defendant. Ford issued checks in the agreed amounts to Frimberger and all defendant subcontractors except Davis & Averill and Brown by February 11, 1971.

On May 24, 1971, Frimberger filed a voluntary petition for an arrangement under Chapter XI of the Bankruptcy Act. On February 22, 1972, Frimberger consented to a bankruptcy adjudication, and the bankruptcy court formally adjudicated Frimberger a bankrupt on May 11, 1972. Frimberger's trustee initiated separate actions against Ford and the defendant subcontractors in this district court on May 9, 1974 which have since been consolidated in the present action.

Count I of the amended complaint alleges that Ford's payments of funds to the defendant subcontractors constitute voidable preferences under section 60 the Bankruptcy Act in that Ford's payments, that is, the cash transactions themselves, were made on account of antecedent debts made or suffered by Frimberger Corporation while insolvent and within four months of the date Frimberger filed its bankruptcy petition. In Count II the trustee alleges

that the preferential transfers were not discovered until July 26, 1973, and that defendants acted in concert to cover them up.

## I.

*Statute of Limitations*

Frimberger filed for bankruptcy under Chapter XI on May 24, 1971. This proceeding was initiated by the trustee on May 9, 1974, almost three years after the filing of the bankruptcy petition. Since a two-year statute of limitations governs a trustee's action to recover preferential transfers and the statute runs from the date of the filing of the original petition, defendants reason that the statute has run on Count I of the amended complaint.

■ 11 U.S.C. § 29(e) provides in pertinent part that:

"A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy."

A suit to recover preferential transfers is governed exclusively by the two-year limitation period set out in section 29(e). *Herget v. Central National Bank & Trust Co.,* 324 U.S. 4, 8–9, 65 S.Ct. 505, 89 L.Ed. 656 (1945).

Defendants read section 29(e) in conjunction with 11 U.S.C. § 702 which provides that "the date of adjudication" shall be taken to be "the date of the filing of the petition" and conclude that the two-year period commenced to run on May 24, 1971, well before the trustee initiated this action. As the trustee points out, however, defendants overlook the following provision in Chapter XI of the Act:

"All statutes of limitation affecting claims provable under this chapter and the running of all periods of time prescribed by this title in respect to the commission of acts of bankruptcy, the recovery of preferences and the avoidance of liens and transfers shall be suspended while a proceeding under this chapter is pending and until it is finally dismissed."

11 U.S.C. § 791.

■ On May 11, 1972, Frimberger's Chapter XI proceeding was converted into an ordinary bankruptcy proceeding, and the bankruptcy court adjudicated Frimberger a bankrupt. Section 791 on its face suspended the period of limitation governing the trustee's recovery of preferences from May 24, 1971 until May 11, 1972, while the Chapter XI proceeding was pending. Defendants contend, however, that the period of limitations began to run anew on February 22, 1972, the date on which Frimberger consented to a bankruptcy adjudication, rather than on May 11, 1972, when the bankruptcy court itself adjudicated Frimberger a bankrupt. The court rejects this argument. The formal bankruptcy adjudication, not the consent to adjudication, terminated the Chapter XI proceeding. Since this action was begun May 9, 1974, the court finds that the two-year limitation period of section 29(e) had not then run. Defendant's motions for summary judgment, insofar as they are predicated upon the statute of limitations, are therefore denied.

## II.

*The Alleged Preferential Transfers*

Section 60(a)(1) of the Bankruptcy Act, 11 U.S.C. § 96(a)(1), defines a voidable preference as follows:

"A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater

percentage of his debt than some other creditor of the same class."

Defendants' motions are directed toward only that element of a preference which requires a transfer of property by the debtor within four months preceding the filing of a bankruptcy petition.

The defendant subcontractors contend that Frimberger's authorizations of direct payment from Ford to them constituted "assignments" of the amounts owing Frimberger from Ford which qualify as transfers outside the four month period preceding the onset of bankruptcy. The trustee, on the other hand, asserts that no transfers occurred until Ford actually tendered payment to the subcontractors within the four month period. That Ford issued checks to the subcontractors within four months of Frimberger's bankruptcy is undisputed. Thus framed, the issue is whether Frimberger's payment authorizations of December, 1970, and acceptance thereof by the subcontractors through their execution of lien waivers by January 15, 1971, constitute "transfers" perfected outside the four month period preceding bankruptcy. Since Frimberger filed its Chapter XI petition on May 24, 1971, the cutoff date for determining the perfection of any preferential transfer is January 24, 1971.

The definitional section of the Bankruptcy Act, 11 U.S.C. § 1(30), defines a "transfer" in the following terms:

" 'Transfer' shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial proceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise . . . ."

Section 60(a)(2) governs the time of transfer:

"[A] transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee."

11 U.S.C. § 96(a)(2). A lien obtainable by legal or equitable proceedings upon a simple contract means a lien arising in the ordinary course of such proceedings upon entry or docketing of a judgment or decree, or upon attachment, garnishment, execution, or like process, whether before, upon, or after judgment or decree and whether before or upon levy. 11 U.S.C. § 96(a)(4).

■■ When a transfer is perfected depends upon state law. *Corn Exchange National Bank v. Klauder*, 318 U.S. 434, 63 S.Ct. 679, 87 L.Ed. 884 (1943); J. Moore & L. King, 3 *Collier on Bankruptcy* ¶ 60.39[2], at 957 (14th ed. 1975) [hereinafter *Collier*]. Under Michigan law, a contract right to money due is assignable and effective when made. *See, e. g., L. C. Monroe Co. v. Vander Sys*, 260 Mich. 511, 245 N.W. 506 (1932); *Neumann v. Calumet & Hecla Mining Co.*, 57 Mich. 97, 23 N.W. 600 (1885).

*L. C. Monroe* was a garnishment action initiated by a subcontractor-creditor against a homeowner to recover from him money due the contractor for material the subcontractor supplied in the construction of a home. The building contract provided that the owner was entitled to a home free of liens and indebtedness incurred by the contractor and that, failing the contractor's performance of the agreement, the owner was free to provide material and labor at the contractor's expense. Before completion of the home, the contractor provided the homeowner with a list of materials used in the project for which payment had not yet been made and told him that he would have to pay the materialmen. The homeowner proceeded to do so although the amounts exceeded

the amount remaining unpaid under the building contract. The homeowner recited these facts in his disclosure in response to the writ of garnishment served upon him by a yet-unpaid subcontractor.

On these facts, the court held:

"Under the terms of the contract, the owner had the right to see to it that the material placed in his building was paid for, and the request of the contractor that he should make such payments, acceded to by him, was in effect an assignment of his claim for the balance due. . . . Thereafter, as the court found, the owner had no moneys in his hands belonging to the contractor, and the judgment in favor of the garnishee was properly entered."

260 Mich. at 513, 245 N.W. at 506. Similarly, in *Neumann v. Calumet & Hecla Mining Co., supra,* the court held that a workman's verbal assignment of proceeds due him under a contract to two of his creditors was effective against a writ of garnishment subsequently served upon his debtor by another creditor. 57 Mich. 106, 23 N.W. 600.

■ In the light of these cases and on the facts in this case, the court concludes that Frimberger's payment authorizations of December, 1970, accepted by the subcontractors who executed waivers of their liens soon thereafter, constituted perfected transfers accomplished outside the four month period preceding Frimberger's bankruptcy. By the plain language of the December 8th and 15th authorizations, Frimberger consented at that time to Ford's direct payment of the enumerated subcontractors. In addition, Frimberger agreed in the same authorizations that the direct payments would be, to the extent paid, in complete satisfaction of any liability Ford may have had to pay those amounts to Frimberger. Copies of these authorizations were posted by Frimberger on December 18, 1970 and stamped "Paid" at that time. Frimberger credited Ford's account on the Metuchen contract to re-

flect direct payment of the authorized amounts two days earlier. In short, by the end of December, 1970, Frimberger had written off its debts to the subcontractors on the strength of the authorizations. As reflected in the books and accounts of Frimberger, Frimberger owed the named subcontractors nothing, and Ford was no longer indebted to Frimberger in those amounts.

Subsequent events served to ratify and to confirm the understanding embodied in the December authorizations. Ford undertook to notify the affected subcontractors and requested that they forward executed waivers of liens. By January 15, 1971, twelve subcontractors had executed the required waivers. Since those subcontractors who executed formal waivers of liens after January 24, 1971, American Crane & Conveyor, Davis & Averill, and Elbee, all requested Ford's help in securing payment from Frimberger prior to the four month period preceding Frimberger's bankruptcy and were later paid in full, the court presumes their timely acceptance of the terms of the payment authorizations.

On January 14, 1971, Ford and Frimberger arrived at a final settlement of accounts on the Metuchen contract. Frimberger's release and indemnification agreement of that date confirmed that Ford owed Frimberger only $98,575.27 on the contract, the original amount outstanding on the contract, $355,090.99, less the amounts subject to the authorizations. The release and indemnification agreement also reflected prior authorizations of direct payment to American Crane & Conveyor, Davis & Averill, Inc., and an additional amount owing to Elbee which was not reflected in the prior authorization.

■ Under Michigan law, these transfers were self-perfecting upon execution. *See L. C. Monroe v. Vander Sys, supra; Neumann v. Calumet & Hecla, supra.* Given Frimberger's surrender to its right to payment from Ford outside the four month period preceding bankruptcy, Ford's issuance of checks within

the four month period did not alter the non-preferential character of the initial transfers. The "transfer" within the meaning of section 60 of the Bankruptcy Act was effected by Frimberger's authorizations, not Ford's issuance of the checks. *See, e. g., Associated Seed Growers v. Geib*, 125 F.2d 683 (4th Cir. 1942) (bankrupt's assignment of funds to accrue in future under contracts between bankrupt and third party held valid as to creditor-beneficiary who had sold goods to bankrupt; assignment does not become preferential because funds come into debtor's hands within four months of bankruptcy); *Hughes v. Lawyers Trust Co.*, 108 F.2d 792 (2d Cir. 1940) (debtor's assignment of bonds outside four month period not preferential even though delivery and payment of bonds occurs within four month period); *Scarborough v. Berkshire Fine Spinning Associates*, 128 F. Supp. 948 (S.D.N.Y.1955) (when an assignment has been perfected, payments or collections on account made within four month period are not preferential).

 For the foregoing reasons, the defendants' motions for summary judgment, with the exceptions of Brown's and Clark's motions, are granted. Defendant Brown's motion is denied on this ground because that defendant was not subject to Frimberger's December, 1970, authorizations, and Ford declined to make payment pursuant to the authorization of January 27, 1971. Frimberger paid Brown directly within the four month period preceding Frimberger's bankruptcy. Clark's motion is granted except as to Clark's additional claim against Frimberger, payment of which Frimberger did not authorize until January 27, 1971, a date within the four month period.

### III.

*The Michigan Builder's Trust Fund Act*

As an alternative theory in support of their motions for summary judgment, the defendant subcontractors contended that the payments received from Ford for their work on the Metuchen contract were not recoverable by the trustee as preferences because the Builder's Trust Fund Act, M.C.L.A. 570.152, excluded such payments from the bankrupt's estate. This argument now has direct relevance only to Brown and to Clark's additional claim. However, this argument remains equally applicable to the trustee's claims against all defendants as an additional or alternative reason in support of their motions for summary judgment.

The trustee opposes defendants' reliance on the trust fund statute because, in the trustee's view, Ford never paid the building contract fund over to Frimberger in a manner which makes the Act applicable. The trustee urges that, if the Act does apply, the funds in question should still be turned over to the trustee so that he can determine which creditors have a right to payment therefrom. The positions of the parties raise two issues: (1) whether the Builder's Trust Fund Act impressed a trust upon Ford's payment to the defendants; (2) whether, if the Act impressed a trust which excludes those payments from the bankrupt's estate, the trustee may now recover those payments as preferences.

The Michigan Builder's Trust Act, M.C.L.A. 570.151, provides in pertinent part that:

"In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes."

Although this Act was initially designed to protect people from fraud in the building construction industry and imposes criminal penalties for violations, the Michigan Supreme Court has construed the Act as providing a private

right of action for breach of the fiduciary duties imposed. *See B. F. Farnell Co. v. Monahan*, 377 Mich. 552, 141 N.W.2d 58 (1966). Specifically, *Monahan* held that a defendant contractor's discharge in bankruptcy did not extinguish his liability as trustee under the Act to a plaintiff subcontractor because funds subject to the Act were not the property of a bankrupt. *Id.* at 557, 141 N.W.2d 58.

■■ The trustee's position that the contract payments in question were never paid to Frimberger as required by the Act as a condition precedent to existence of the trust is without merit. First, with regard to Ford's payment to Clark, Ford was an "any person" within the meaning of the Act. Second, with regard to Frimberger's payment to Brown, Frimberger was clearly a "contractor." Because the funds in question were disbursed by and paid to persons subject to the Act, this case is distinguishable from *Met-Bay Inc. v. Valley Roofing Co.* (68–8176 E.D.Mich.1969), the case upon which the trustee relies most heavily. There, the Bankruptcy Referee held that funds held by an owner and not disbursed to a subcontractor prior to bankruptcy are not subject to the Act but must be treated as an account receivable subject to the exclusive jurisdiction of the bankruptcy court and the receiver's determination of priority rights to the fund.

■ In addition, the trustee's argument that Ford never "paid" Frimberger within the meaning of the Act ignores the substance of the transactions among the parties. Ford never "paid" Frimberger only because Frimberger first authorized Ford to make direct payment to the subcontractors. For purposes of the Act, the effect of these transactions is the same as if Ford had in fact paid Frimberger in compliance with the Metuchen contract. The court holds, therefore, that the Builder's Trust Fund Act impressed a trust upon Ford's payment to Clark and upon Frimberger's payment to Brown. Under *B. F. Farnell*

*Co. v. Monahan, supra,* these payments are not part of the bankrupt's estate. This rationale applies with equal force to the other defendant subcontractors as well.

It is axiomatic that the trustee may recover as preferences under section 60 of the Bankruptcy Act only property of the debtor. Section 60 does not define the term "property." Those items which constitute property of the debtor are enumerated in section 70 of the Act, 11 U.S.C. § 110. 3 *Collier* ¶ 60.07[2], at 791.

■ Section 70 defers to state law in the matter of trusts created in favor of designated persons. Where the bankrupt is in possession of property impressed with a valid trust, the trustee holds such property subject to the interest of the trust beneficiaries and not for distribution to creditors of the bankrupt's estate. 4A *Collier* ¶ 70.25[1], at 339–40, 348.1; *see, e. g., Wickes Boiler Co. v. Godfrey-Keeler Co.*, 116 F.2d 842 (2d Cir. 1940), *mod. on rehearing*, 121 F.2d 415, *cert. denied*, 314 U.S. 686, 62 S.Ct. 297, 86 L.Ed. 549 (1941) (provision of New York Lien Law impressing a trust upon funds received by contractor for benefit of subcontractor); *In re Heintzelman Construction Co.*, 34 F. Supp. 109 (W.D.N.Y.1940) (property impressed with trust under state law available first to beneficiaries of the trust and takes priority over taxes payable United States); *Albert Pick Co. v. Travis*, 6 F.Supp. 486 (E.D.N.Y.1933) (provision of New York Lien Law impressing a trust upon funds received by a contractor for benefit of subcontractor).

Since *B. F. Farnell Co. v. Monahan, supra,* held that moneys such as those paid to Clark and Brown were impressed with a trust and excluded from the bankrupt's estate, the trustee may not now recover those payments as preferences. They are not "property" of the debtor subject to recovery under section 60 of the Bankruptcy Act. Accordingly, Clark's and Brown's motions for summa-

ry judgment are granted, and the motions of all other defendant subcontractors are granted for this additional reason as well.

### IV.

*The Claim Against Ford*

 Because Ford was a debtor of Frimberger by virtue of its obligation to make payments on the Metuchen contract, Ford occupies a position in this suit distinct from the other defendants who, as creditors of the bankrupt, actually received payments. The court's holding in favor of the defendant subcontractors on both the theory that no preference occurred and that the Michigan Builder's Trust Act is applicable relieves Ford of any liability to the trustee for its acts. However, Ford urges additionally that it is not liable for the recovery of a preference because it acted in good faith as a neutral stakeholder throughout the subject transactions and did not literally "receive" the alleged preferences.

 Section 60(b) of the Bankruptcy Act provides in pertinent part that:

"Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property . . . ."

As this language suggests, the trustee's recovery is limited to those persons who receive or convert the bankrupt's property. One who merely facilitates another's receipt or conversion of the bankrupt's property may not be liable to the trustee under section 60. *See, e. g., Brinig v. American Credit Bureau,* 439 F.2d 43 (9th Cir. 1971) (collection agency which recovered money from bankrupt within four months of bankruptcy on behalf of unpaid creditors not liable for recovery of preference since agency functioned only as conduit and intermediary between bankrupt and its creditors); *Elliot v. Glushon,* 390 F.2d 514 (9th Cir. 1967) (trustee denied recovery of a preference under section 60 against attorney who allegedly conspired with creditors of bankrupt to effect preferential transfers of property because attorney functioned only as escrow holder and received no interest in property transferred).

 Ford's assertion that the trustee's recovery is limited to those persons who literally receive property rather than to conduits and intermediaries stems from too narrow a reading of section 60 given the facts in this case. Ford was more than a conduit or intermediary between Frimberger and the subcontractors. Ford was a principal with a substantial stake in the multiparty transactions which occurred, not a neutral middleman. Moreover, Ford received an indirect benefit to the extent that payment to the subcontractors simultaneously discharged Ford's debt to Frimberger.

Thus, if the subcontractors had received preferences and had not been exonerated from liability because of the Michigan Builders Trust Fund Act, Ford, if the facts warranted, could be held liable for paying the money due Frimberger to the subcontractors knowing that their receipt of the money would create a preference. In such a case, Ford's liability would be predicated upon its conversion of funds otherwise available to the trustee for other creditors and its receipt of value by virtue of the reduction or elimination of its debt to Frimberger. *Cf. Duell v. Brewer,* 92 F.2d 59, 61 (2d Cir. 1937) (L. Hand, J.) (creditor of transferee who joins with transferee to secure a preference and receives it in discharge of a debt is liable to extent that transferee cannot respond).

Ford's motion for summary judgment is granted as to Count I of the amended complaint.

### V.

*Count II of the Amended Complaint*

In Count II of the amended complaint, the trustee alleges that the preferential

transfers were not discovered until July 26, 1973, and that defendants acted in concert to cover them up. All motions for summary judgment are granted on Count II of the amended complaint because the record is totally devoid of any evidence of fraud, collusion, conspiracy, or concealment. Moreover, the parties admitted in open court at oral argument on these motions that if Count I were dismissed, Count II would fall as well.

It is ordered that the plaintiff's claims against all defendants be dismissed.