**In re NORTHEASTERN CONTRACTING CO., Debtor.**

**John J. O'NEIL, Jr., Trustee, Plaintiff,**

**v.**

**ORIX CREDIT ALLIANCE, INC., Salvatore J. Marino, Sr., and Salvatore J. Marino, Jr., Defendants.**

**Bankruptcy No. 93–21878.
Adversary No 95–2154.**

United States Bankruptcy Court,
District of Connecticut.

Aug. 23, 1996.

George M. Purtill, Purtill, Purtill & Pfeffer, Glen Lochen, Glastonbury, CT, for Trustee–Plaintiff.

G. Eric Brunstad, Jr., Hebb & Gitlin, P.C., Hartford, CT, for Orix Credit Alliance, Inc., Defendant.

Darcy McGraw, Zeisler & Zeisler, P.C., Bridgeport, CT, for Salvatore J. Marino, Sr., Defendant.

Robert G. Wetmore, Wallingford, CT, for Salvatore J. Marino, Jr., Defendant.

### MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

John J. O'Neil, Jr., Trustee of the Chapter 7 Estate of Northeastern Contracting Co. (the "Debtor"), on June 2, 1995, brought a complaint pursuant to 11 U.S.C. § 547(b)[1] to set aside and recover as preferential two payments which the Debtor made to the defendant, Orix Credit Alliance, Inc. ("Orix") on a debt guaranteed by defendants, Salvatore J. Marino, Sr. and Salvatore J. Marino, Jr., insiders of the Debtor. The complaint alleges the payments were made more than 90 days but less than one year before the bankruptcy petition date. The court initially denied both Orix's motion to dismiss the complaint as to it[2] and Orix's and the Trustee's cross-motions for summary judgment. Orix and the Trustee have now submitted the matter, as between them, upon a stipulation of facts and memoranda, on which the following background is based.

### II.

### BACKGROUND

### A.

Creditors filed an involuntary Chapter 7 petition against the Debtor, a construction

---

**1.** Section 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

   (1) to or for the benefit of a creditor;

   (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

   (3) made while the debtor was insolvent;

   (4) made—

   (A) on or within 90 days before the date of the filing of the petition; or

   (B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

   (5) that enables such creditor to receive more than such creditor would receive if—

   (A) the case were a case under chapter 7 of this title;

   (B) the transfer had not been made; and

   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

**2.** See O'Neil v. Orix Credit Alliance, Inc. (In re Northeastern Contracting Co.), 187 B.R. 420 (Bankr.D.Conn.1995).

firm, on May 11, 1993. The Debtor made two payments of $6,000.00 each to Orix on August 25, 1992 and September 17, 1992 (the "Transfers")[3] by endorsing checks received by the Debtor from Industrial Construction Co., Inc. ("ICCI") over to Orix. *See Stipulated Facts,* ¶ 3–7. The Transfers represent progress payments for work performed under a construction contract between the Debtor, as subcontractor, and ICCI, as general contractor. *Id.* at ¶ 5, 7. The Transfers are proceeds from accounts receivable generated by the Debtor for work it had previously performed. *Id.* at ¶ 8. The Debtor made the Transfers to Orix while insolvent. *Id.* at ¶ 15. The Debtor had granted Orix a security interest on August 2, 1991 in, *inter alia,* the Debtor's existing and after-acquired accounts receivable and their proceeds. *Id.* at ¶ 16.[4] Orix duly perfected such security interest and is an undersecured creditor of the Debtor at least in an amount equal to the amount of the Transfers. *Id.* at ¶ 13, 17. The Trustee relies on the *Deprizio* trilateral doctrine to extend the preference recovery period to one year in order to recover from Orix. *Id.* at ¶ 21–22.

### B.

Orix contends the Transfers are not preferential in that the Transfers did not result in any diminution of the Debtor's estate because Orix was entitled to receive the $12,000.00 under its perfected security interest, as the proceeds of its collateral—the accounts receivable. The Trustee contends a transfer under § 547(e)(3)[5] does not occur until the debtor has acquired rights in the property transferred; the Debtor did not acquire rights in the Transfers until the time of payment; Orix's security interest therefore is avoidable as attaching within one year of the petition date. Orix responds that its security interest attached not at the time of the Transfers, but on October 21, 1991, the date the Debtor executed the contract with ICCI, and is thus outside the one-year preference period and not avoidable.

3. So designated in the stipulation.

4. Neither the Trustee's complaint nor Orix's answer contain any reference to a security interest held by Orix in property of the Debtor.

### III.

### DISCUSSION

█ Orix's collateral, the accounts receivable, came into existence when the Debtor earned the right to payment for work performed under the contract with ICCI. The Debtor acquired rights in the accounts receivable, and Orix's security interest attached, on the dates the Debtor rendered performance to ICCI, not the date of the ICCI contract execution. *See Northwest Elec. Co. of Ohio v. A.P. O'Horo Co. (In re Northwest Elec. Co. of Ohio),* 84 B.R. 400 (Bankr.W.D.Pa.1988) (date of transfer under preference statute is date upon which Debtor earned right to payment); *Graban v. McDowell Nat'l Bank (In re Engel),* 96 B.R. 602, 604 (Bankr.W.D.Pa.1989) ("lien on an account receivable of the debtors ... could not be perfected until the debtors' right to payment of the account arose, and the right to payment did not arise until the work was performed. No work—no account receivable— no lien.").

Orix and the Trustee, through their stipulation, have, in effect, merged the dates of payment and endorsement of the checks with dates that the Debtor performed the work. The Trustee, in his brief, states the "payments [were] earned at (or shortly before) the time of payment." *Trustee Reply Brief* at 2. Orix, in its responsive brief, does not oppose this characterization of the Trustee and relies on its own contention that its "security interest in the Transfers [arose] at the time the [ICCI] Contract was executed." *Orix Memorandum Of Law In Opposition To Reply Brief Of Plaintiff* at 7. n. 3. *Cf. Beck v. Int'l Harvester Credit Corp. (In re E.P. Hayes, Inc.),* 29 B.R. 907 (Bankr. D.Conn.1983).

The Court finds, treating the dates the Debtor received payments as occurring shortly after the dates the Debtor performed

5. Section 547(e)(3) provides: "For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred." 11 U.S.C. § 547(e)(3).

service under the ICCI contract, that the transfers to Orix, for the purposes of § 547, occurred within one year of the petition date. The transfers are avoidable.

Orix has repeated its argument that under *In re Erin Food Services, Inc.*, 980 F.2d 792 (1st Cir.1992), the $12,000.00 payment to Orix conferred no tangible benefit on Salvatore J. Marino, Jr., one of the insiders, and that Orix is entitled thereby to judgment. This contention invoking the *Deprizio* doctrine was addressed by the court in the ruling cited in note 2, *supra*, and the court sees no reason to change its opinion .

## IV.

### CONCLUSION

■ The Trustee has satisfied his burden of proving that the $12,000.00 transferred to Orix represents a voidable transfer under § 547. Accordingly, a partial judgment shall enter that the Trustee recover of Orix the sum of $12,000.00, plus interest and costs.

### PARTIAL JUDGMENT

This action having come before the Court, Honorable Robert L. Krechevsky, United States Bankruptcy Judge, presiding, and the Court having issued a written ruling of even date, it is

ORDERED, ADJUDGED AND DECREED that the plaintiff John J. O'Neil, Jr., Trustee, recover of the defendant, Orix Credit Alliance, Inc., the sum of $12,000.00, with interest thereon at the rate of 5.67% from June 2, 1995, the date of the complaint, and his costs of suit.