In re **DIVERSIFIED WORLD INVESTMENTS, LTD., Debtor.**

**DIVERSIFIED WORLD INVESTMENTS, LTD., Plaintiff,**

v.

**OMNI INTERNATIONAL, LTD., (Formerly known as Euro-Air Finance, Ltd.), Defendant.**

**Bankruptcy No. 81–00746–HB. Adv. No. 81–0232–HP.**

United States Bankruptcy Court, S. D. Texas, Houston Division.

July 14, 1981.

Hugh M. Ray, Andrews, Kurth, Campbell & Jones, Houston, Tex., for plaintiff.

Rhett G. Campbell, Morris, Campbell & Seikel, Houston, Tex., for defendant.

### Memorandum Opinion on Motion to Dismiss

E. H. PATTON, Jr., Bankruptcy Judge.

The matter before the court is a motion to dismiss a complaint brought by a Chapter 11 debtor in possession to recover alleged preferential transfers made by the plaintiff to the defendant.

Diversified World Investments, Ltd. (hereinafter referred to as Diversified) agreed to purchase a Boeing aircraft from Omni International, Ltd. (hereinafter referred to as Omni) on December 20, 1978. As part of the transaction Diversified executed a sales management agreement, a promissory note and a chattel mortgage. The sales agreement was terminated and replaced by another agreement on July 17, 1980. This second agreement, among other things, recognized that Diversified had leased the aircraft to Aramco Overseas Company (hereinafter referred to as Aramco) on December 10, 1979. Also on July 17, 1980 Diversified entered into an assignment agreement which assigned to Omni all rental payments due to Diversified from Aramco as additional security for the debt owed to Omni by Diversified.

Diversified filed a petition for relief under Chapter 11 of the Bankruptcy Code on March 9, 1981. On March 18, 1981 Diversified brought an adversary proceeding in this court against Omni to recover at least $637,340 in payments received by Omni within 90 days of the filing of Diversified's Chapter 11 petition. Diversified contends that the payments in controversy were preferential under § 547(b) of the Bankruptcy Code. Omni has moved to dismiss the complaint for failure to state a claim upon which relief can be granted and for failure to join a party needed for a just adjudication.

Omni takes the position that the assignment of rental payments, which took place outside of the 90 day preference period, was complete when made on July 17, 1980 and that the payments, which were made within the 90 days preceding the Chapter 11 petition were not transfers. Omni also contends that Aramco, which was not made a party to this proceeding, is a party needed for a just adjudication.

In relevant part, § 547(b) authorizes a debtor in possession to avoid a *transfer* of a debtor's property

(1) to or for the benefit of a creditor;

(2) for or on account of a antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

    (A) on or within 90 days before the date of the filing of the petition; ...

(5) that enables such creditor to receive more than such creditor would receive if—

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Under § 101(40) a transfer is defined as "every mode, direct *or indirect*, absolute or conditional, voluntary or involuntary, or disposing of or parting with property or with an interest in property, including retention of title as a security interest." (Emphasis added) At issue is whether Diversified, by alleging that rental payments were made within 90 days of its filing subject to avoidance relief under the Bankruptcy Code, has alleged that a transfer was made. If the rental payments are transfers, then Diversified has stated a claim upon which relief can be granted.

In support of its position that the transfer was complete on July 17, 1980 at the time that the assignment of rental payments was made, Omni has cited the court to several pre-Code cases which indicate that an assignment of the right to payments is complete when made and that subsequent payments made pursuant to the assignment are not transfers. *See Selby v. Ford Motor Company*, 405 F.Supp. 164, 173 (E.D.Mich. 1975).

Under § 547(e)(3), for purposes of § 547 "a transfer is not made until the debtor has acquired rights in the property transferred." The legislative history reveals that § 547(e)(3) is intended to overrule such cases as *DuBay v. Williams*, 417 F.2d 1277 (9th Cir.1966), and *Grain Merchants of Indiana, Inc. v. Union Bank and Savings Co.*, 408 F.2d 209 (7th Cir.1967). In *Grain Merchants*, the court held that a transfer was completed when a secured creditor perfected a security interest in accounts receivable and that no transfer occurred when the proceeds from the accounts receivable were paid to the secured creditor, *See* H.R. No. 95–595, 95th Cong., 1st Sess. (1977) 374; S.Rep.No. 95–989, 95th Cong., 2d Sess. (1978) 89, U.S.Code Cong. & Adm. News 1978, p. 5787; 4 *Collier on Bankruptcy*, ¶ 547.45 at 547–135 (15th ed. 1979).

■■■ Although not specifically considered by the legislative history, the court believes that § 547(e)(3) was intended to bring payments made pursuant to an assignment within the term "transfer". Under § 101(40) the term transfer was intended to be "as broad as possible", H.R.Rep. No. 95–595, 95th Cong., 1st Sess. (1977) 314; S.Rep.No. 95–989, 95th Cong., 2d Sess. (1978) 27, and § 101(40) clearly includes indirect payments. Furthermore, when § 547(e)(3) is read together with § 101(40) it appears to the court that the rental payments from Aramco to Omni were indirect transfers made for the benefit of Diversified as the rental payments were intended to reduce Diversified's indebtedness to Omni. Thus, while indirect, the rental payments were made when Diversified obtained a right to receive them and not at the time of the assignment. Omni occupies a position analogous to that of the secured creditor in *Grain Merchants, In re Cox*, 10 B.R. 268, 271 (Bkrtcy. D.Md.1981), with the difference being that the transfer is indirect rather than direct.

The lease that generated the payments to Omni was between Diversified and Aramco. Had that lease been terminated for any reason Omni would not have been entitled to receive the rental payments. Accordingly, Omni had rights to the lease payments only as they were made by Aramco, notwithstanding the previously executed assignment. The debtor did not acquire any right to the rentals except as they became due from Aramco. Thus under § 547(e)(3) the transfer was not made until such time as the rents accrued under the terms of the lease. Since Diversified's complaint alleges that payments were received within 90 days of the filing of its Chapter 11 petition, the court concludes that a claim upon which relief can be granted has been pled. The

court notes that the motion to dismiss should be granted only if there is no basis on which plaintiff could recover and the court is not ruling as a matter of law that there was a preferential transfer. That determination will require further proof.

The court also believes that the complaint should not be dismissed for failure to join Aramco as a party defendant. The adversary proceeding was brought to recover alleged preferences received by Omni, and it is not apparent from the face of the complaint why Aramco is needed for a just adjudication. While it may be that Aramco has documents or other evidence relevant to the preference action, it does not necessarily follow that Aramco must be made a party. In its motion to dismiss, Omni states that Aramco has "rights and obligations" that would possibly be affected by the outcome of this litigation. However, Omni has not stated, much less demonstrated, the nature of the unprotected interests of Aramco as an absent party. It was Omni's burden to do so. 5 Wright & Miller, *Federal Practice & Procedure*, § 1359 at 629 (1969). Since it has not been shown that Aramco is needed for a just adjudication, the motion to dismiss for failure to join will also be denied. An order conforming with this opinion is being entered this date.