**In the Matter of E.P. HAYES, INC., Debtor.**

**Bruce BECK, Trustee, Plaintiff,**

v.

**INTERNATIONAL HARVESTER CREDIT CORPORATION, Defendant.**

**Bankruptcy No. 2–82–00711.
Adv. No. 2–82–0605.**

United States Bankruptcy Court,
D. Connecticut.

May 11, 1983.

---

Martin W. Hoffman, Hartford, Conn., for trustee-plaintiff.

Robert A. Greenspon, Stamford, Conn., and Stephen E. Goldman, Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

The question here, the facts being undisputed, is whether payments to a creditor pursuant to an assignment of payments executed by the debtor prior to the preference period but received by the creditor when the debtor was insolvent and within the preference period are avoidable under 11 U.S.C. § 547.[1]

### II.

The debtor, E.P. Hayes, Inc., owned and operated a fleet of school buses providing pupil transportation services to a number of Connecticut towns. On July 30, 1982, the debtor filed a petition under chapter 11 and on August 24, 1982, the court ordered the appointment of a trustee. By complaint filed October 1, 1982, the trustee alleged that the defendant, International Harvester Credit Corporation (IHCC), received two payments within the preference period totaling $92,752.36 from funds of the debtor. In its answer, IHCC admitted that it received the payments but denied that they constituted preferences. IHCC alleged that the payments were made pursuant to an assignment executed by the debtor on October 22, 1979 which transferred the debtor's rights to earnings under a bus service contract with the Board of Education for the Town of Enfield, Connecticut (town) and that the payments were not property of the debtor's estate at the time of receipt by IHCC.

### III.

At trial the parties established the following facts. On October 22, 1979, the debtor and IHCC executed a refinance agreement for $2,934,085.50 then due from the debtor to IHCC. This agreement granted IHCC a security interest in numerous motor vehicles of the debtor and contained the following covenant by the debtor to assign contract payments:

> Furthermore, in consideration of this Refinance Agreement and for the purpose of additionally securing payments of the indebtedness herein described, Debtor, for itself, its successors and assigns, shall assign to IHCC, its successors or assigns, the sum of $65,201.90 per month being those payments, or a portion of

---

1. Section 547(b) allows the trustee to "avoid any transfer of property of the debtor" to or for the benefit of a creditor, for or on account of an antecedent debt, made while the debtor was insolvent, and within 90 days before the petition, and that enables the creditor to receive more than such creditor would receive if the debtor were liquidated under chapter 7, absent the transfer.

those payments, becoming due under its Pupil Transportation Contract with the Board of Education for the Town of Enfield, County of Hartford, State of Connecticut dated August 30, 1977 and any extension or replacement thereof, and Debtor shall authorize said Board of Education to pay monthly said sum of $65,-201.90 due under said Pupil Transportation Contract or any extension or replacement thereof to IHCC to meet the Obligations of Debtor to IHCC pursuant to the provisions of this Refinance Agreement.

The debtor also executed an assignment which, in pertinent part, states:

> E.P. Hayes, Inc. ... (hereinafter referred to as "Assignor"), for value received, does hereby for itself, its successors and assigns, assign to INTERNATIONAL HARVESTER CREDIT CORPORATION, a Delaware Corporation, (hereinafter referred to as "Assignee"), its successors and assigns, the sum of $65,201.90, per month, being a portion of those payments becoming due under its Pupil Transportation Contract with the Board of Education for the Town of Enfield County of Hartford, State of Connecticut, dated August 30, 1977 and as extended by instrument dated [blank] for the period commencing September 1, 1978, and authorizes said School District to pay monthly said sum of $65,201.90 due thereon under said Contract to Assignee to meet the obligations of E.P. Hayes,

Inc. to the Assignee pursuant to the provisions of the Retail Installment Contract being dated September 10, 1979 and attached hereto and made a part hereof.

The town consented in writing to the assignment.[2]

Edward Hayes, Jr., the president of the debtor, testified that under its contract with the town the debtor periodically invoiced the town for pupil transportation services as rendered.[3] After the execution of the refinance agreement, the town would issue a check payable to IHCC and send it to the debtor,[4] who would then forward the check to IHCC. If the amount due the debtor on the invoice was greater than the amount assigned for that month to IHCC, the town issued a second check for the difference payable to the debtor. On six occasions between December 14, 1981 and July 26, 1982, Hayes sent a letter to the town requesting it not to pay all the monies due IHCC but to send a portion of those monies by check payable to the debtor or to other persons as directed by Hayes. The town complied in each instance. Hayes did not contact IHCC before seeking these payment diversions, and IHCC did not question the diversions until May of 1982. The payments to IHCC from the town occurred in April and May of 1982 in the amounts of $49,494.82 and $43,257.54, respectively.

## IV.

Preference avoidance fulfills the original purpose of bankruptcy law—equality of dis-

---

**2.** IHCC perfected its interest in the Enfield contract by filing a financing statement which describes the covered property as follows:

> All of the Debtor's right, title and interest in and to $65,201.90 of the payments due and to become due under (a) the Agreement for Transportation of Town of Enfield School Children dated August 30, 1977, as the same may be amended from time to time, between the Debtor and the Board of Education of the Town of Enfield, Connecticut, and (b) any and all other public transportation contracts between the Debtor and boards of education and/or town, which may be assigned by Debtor to the secured party in accordance with the terms of the Refinance Agreement between Debtor and the Secured Party dated October 22, 1979.

The trustee raises no issue as to the wording of the financing statement.

**3.** Mr. Hayes' testimony is confusing as to whether the debtor billed the town monthly or "bi-monthly", but it is clear that the debtor would regularly invoice the town for the services performed under the contract. Although the contract and the bills were not introduced into evidence, it appears that the April and May, 1982 payments were for services recently performed.

**4.** On February 19, 1980, another assignment was executed which changed the assigned amount from $65,201.90 to $64,495.18, and by letter dated August 27, 1981, the debtor and IHCC further agreed to a modified schedule of monthly payments which varied from $59,-056.00 to $96,035.00 for the months between October, 1981 and July, 1982.

tribution to creditors of the assets of a debtor. Section 547 is directed toward bringing back into the estate property of the debtor transferred during the preference period. The specific issue present here is whether the transfer of the debtor's property took place in April and May of 1982 as the trustee contends, or on October 22, 1979, as IHCC alleges. The trustee bases his position on § 547(e)(3) which mandates that for preference purposes, "a transfer is not made until the debtor has acquired rights in the property transferred." He says that the payments to IHCC in April and May, 1982 were the transfer dates because prior thereto the debtor had no right to these payments since it had not performed the services giving rise to the right to receive the payments. In effect, the trustee is claiming that § 547(e)(3),[5] resurrects a distinction which since 1976 has been eliminated in the Uniform Commercial Code as enacted in Connecticut. Prior to 1976, Conn. Gen.Stat. § 42a–9–106 distinguished between rights to a payment already earned and rights to a payment yet to be earned by distinguishing between an "account" and a "contract right." An "account" was defined as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper." A "contract right" was defined as "any right to payment under a contract not yet earned by performance and not yet evidenced by an instrument or chattel paper." As presently enacted, § 42a–9–106 has eliminated these distinctions and defines an "account" as "any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance."[6]

Under the Bankruptcy Act of 1898, a properly perfected assignment of a contract right was immune from attack by a trustee. "Assignment of rights under an existing executory contract is effective from the time when the assignment is made, and payments subsequently made to an assignee cannot be attacked as voidable preferences even though at the time of the payments all the conditions of a voidable preference exist." 1 *G. Gilmore, Security Interests In Personal Property* § 7.10 at 234 (1965). In *Rockmore v. Lehman,* 128 F.2d 564, *rev'd on rehearing,* 129 F.2d 392 (2nd Cir.1942), the court of appeals of this circuit had occasion to examine a security arrangement similar to the one at hand. The debtor in *Rockmore* had entered into three contracts to furnish and maintain advertising signs, the customer agreeing to make installment payments therefor. The debtor then assigned these contracts to secure financing for the construction of the signs. Initially, Judge Augustus Hand, writing for the majority, held that, at most, the assignee had an equitable lien upon future contractual payments which were avoidable by the trustee under § 70 of the previous Act. Upon rehearing, Judge Hand, writing for a unanimous court, reversed this holding, concluding instead that the "date of the assignments governed the imposition of the liens on any sums due ...." 129 F.2d at 893. *See also Selby v. Ford Motor Co.,* 405 F.Supp. 164 (E.D.Mich.1975), *aff'd,* 590 F.2d 642 (6th Cir.1979); *Malone v. Bolstein,* 151 F.Supp. 544 (N.D.N.Y.1956), *aff'd,* 244 F.2d 954 (2nd Cir.1957).

The question, therefore, is whether the reasoning of *Rockmore* still holds under the Bankruptcy Code. Under the trustee's theory, § 547(e)(3) turned each payment under the Enfield contract into a discrete transfer unrelated to the date of the assignment since the debtor had no right to these pay-

---

**5.** Section 547(e)(3) had no predecessor in the Bankruptcy Act of 1898.

**6.** The comments promulgated by the committee responsible for the 1972 revision of the Uniform Commercial Code state, in part, that the term contract right has proved troublesome by creating a "proceeds" problem in cases in which contract rights become accounts by virtue of performance and in cases in which the secured party inadequately described its collateral in a financing statement by merely claiming "accounts" or "general intangibles" when the financing statement should have included a claim for "contract rights." *National Conference of Commissioners on Uniform State Laws, Uniform Commercial Code* 934 app. II (9th ed. 1978).

ments until it performed the services for the town. He cites *In re Diversified World Investments, Ltd.,* 12 B.R. 517, 8 B.C.D. 28 (Bkrtcy.S.D.Tex.1981) in support of this proposition. An examination of the purposes behind the inclusion of § 547(e)(3) in the Bankruptcy Code, however, negates the trustee's reasoning.

Section 547(e)(3) was a legislative response to such decisions as *DuBay v. Williams,* 417 F.2d 1277 (9th Cir.1969) and *Grain Merchants of Indiana, Inc. v. Union Bank & Savings Co.,* 408 F.2d 209 (7th Cir.1969).[7] *See* Levin, *An Introduction to the Trustee's Avoiding Powers,* 53 Am. Bankr.L.J. 173, 187 (1979). Both *DuBay* and *Grain Merchants* dealt with the effect of after-acquired property clauses in security agreements and concluded that a bankruptcy trustee could not avoid the creditor's lien on collateral acquired by the debtor during the preference period. These cases reasoned that since the secured creditor's rights in the after-acquired collateral could not be defeated by a judicial lien levied after perfection, neither could the trustee defeat such rights. The enactment of § 547(e)(3) overcomes this result by providing "that a transfer is not made, no matter when it is perfected nor when it takes effect between the parties, 'until the debtor has acquired rights in the property transferred' ... [E]ach time the debtor adds to his inventory or accounts, he concurrently transfers a security interest in the new acquisition to the secured creditor. Accordingly, each addition to inventory or accounts constitutes a preferential transfer, because the debt that the transfer secures is an antecedent debt." Levin, *supra* at 189.

Against this background, no basis exists for construing § 547(e)(3) as affecting settled law beyond its effect on after-acquired property clauses. Under *Rockmore,* the payments received by IHCC under the Enfield contract are not after-acquired property. Section 547(a)(3) acknowledges the continuation of such financing arrangements by defining "receivable", for purposes of the preference section, as a "right to payment, whether or not such right has been earned by performance." This definition is essentially the same as that of an "account" under the Uniform Commercial Code and includes the former separate concept of a "contract right."[8] The Enfield contract was an existing executory contract when the debtor assigned its rights to payment to IHCC. The debtor's receivable was acquired at the time of contract execution, even though not yet earned by performance. In short, the debtor acquired its rights to the payments from the town on August 30, 1977; these rights were transferred on October 22, 1979 to IHCC; and receipt of the payments by IHCC in April and May, 1982 do not constitute transfers avoidable by the trustee under § 547. 1A *Bender's Uniform Commercial Code Service Secured Transactions* § 9C.06[6] at 9C–100 (1963).

## V.

The trustee has not sustained his burden of proving all the essential allegations of his complaint, and judgment will enter for the defendant. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Rule 752 of the Rules of Bankruptcy Procedure.

**7.** Legislative history specifically states that the section was enacted to overrule these cases: "[p]aragraph (3) specifies that a transfer is not made until the debtor has acquired rights in the property transferred. This provision, more than any other in this section, overrules *DuBay* and *Grain Merchants,* and in combination with subsection (b)(2), overrules *In re King-Porter Co.,* 446 F.2d 722 (5th Cir.1971)." H.Rep. No. 595, 95th Cong., 1st Sess. 374–75 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 89 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5875, 6330.

**8.** Many of the language changes in § 547 were made to effect a coordination with the Uniform Commercial Code. *Report of the Commission of the Bankruptcy Laws of the United States,* H.R.Doc. No. 93–137 (Pt. II), 93d Cong., 1st Sess. 169 (1976).