**In re William ENGEL d/b/a Engel's Van Service, William L. Engel and Mary Ellen Engel, Individually, and F.E. Kerr Company, Debtors.**

**David J. GRABAN, Esq., Interim Trustee, Plaintiff,**

v.

**McDOWELL NATIONAL BANK, Defendant.**

**Bankruptcy Nos. 87–00077E, 87–00078E. Adv. No. 87–0077.**

United States Bankruptcy Court, W.D. Pennsylvania.

March 6, 1989.

P. Raymond Bartholomew, Sharon, Pa., for McDowell Nat. Bank.

Ronald T. Heiman, Sharon, Pa., for debtors.

---

David J. Graban, Sharon, Pa., Interim Trustee.

## OPINION

WARREN W. BENTZ, Bankruptcy Judge.

### Issue

This is a preference action. The issue is whether accounts receivable of the debtors, which were either paid into the debtors' bank account at McDowell National Bank (the "Bank") and set off by it, or otherwise collected by the Bank, were preferences, where the Bank had a duly perfected security interest in the debtors' accounts receivable and other real and personal property, but the amounts in question collected by the Bank were *earned* by the debtors after the 90th day before the filing of the bankruptcy petition, and represented an improvement in the Bank's position after the 90th day before bankruptcy.

### Facts

The above debtors had done business with the Bank for many years, and in 1985 the Bank had loaned the debtors $165,000 secured by a duly perfected security interest in the debtors' 61 trucks, various other items of incidental personal property, certain real estate and the debtors' accounts receivable. The debtors operated a trucking or hauling service and one of its principal contracts was with the United States Postal Service (the "Postal Service").

The Postal Service contract required specific truck runs on specific days to transport mail from specific locations to other specific locations and the annual payment was prorated to a daily basis and paid in 13 accounting periods with two pay periods in each accounting period. If the trucking service was not performed, the Postal Service would stop payments. If extra work was needed by the Postal Service and ordered by it, extra pay would be made for such extra work on a mileage basis.

The date of bankruptcy was February 17, 1987 and the 90th day prior thereto was November 20, 1986. The trustee agrees that any accounts receivable earned by the debtors *prior to* November 20, 1986 were subject to the valid and perfected lien of the Bank outside of the preference period and, regardless of when collected, were accounts receivable subject to the Bank's lien from which the Bank had a right to obtain payment. The trustee, however, claims, as property of the estate, the amount of the accounts receivable earned by the debtors after November 20, 1986, regardless of when collected, to the extent that such earnings improved the position which the Bank held as of November 20, 1986.

After bankruptcy, the Bank liquidated the real estate, trucks and other tangible personal property, upon which it held security interests, thereby reducing its claim to about $50,000. It looked to collection of the debtors' receivables for payment of the balance due.

The value of the debtors' outstanding accounts receivable on November 20, 1986 was $29,784.83.

The Bank collected $45,974.29 from debtors' receivables after November 20, 1986.

The Bank also collected $6,447.02 from debtors on December 22, 1986; debtors voluntarily paid this amount as a "good faith" payment, not having paid anything on the loan in many months.

Based upon appraisals conducted in 1983, the value of the tangible collateral was great enough so that on November 20, 1986, with the accounts receivable, the Bank considered itself to be fully secured.

### Discussion

After November 20, 1986, the Bank improved its position by $22,636.48 ($45,974.29 plus $6,447.02 minus $29,784.83). All of the requisites of a preference under § 547(b) are satisfied, and the Bank must disgorge the $22,636.48 unless it can establish that its position was not improved, or that it is protected under § 547(c)(5).

The Bank argues that it thought it was fully secured on November 20, 1986, because its 1983 appraisals of the other assets indicated that it was oversecured and that therefore, no payment to it could be preferential under § 547. That argument is rejected. The state of mind of a secured party is not relevant. It is "value" which is important. The Bank liquidated

the debtors' assets reasonably soon after bankruptcy and the actual recovery on liquidation shows that the Bank was undersecured.

*In re Lackow Brothers, Inc.*, 752 F.2d 1529 (11 Cir.1985) cited by the Bank, is inapplicable because it relates, not to an appraised value of tangible assets, but to the face value of accounts receivable on the 90th day before bankruptcy, where the face value (or book value) was the only evidence before the court. Here, there is agreement between the parties that the face value of the receivables on November 20, 1986 was $29,784.83, which was also the real value because it was collected in full.

The Bank also argues that the trustee must show that the improvement in the Bank's position was made possible by the incurring of additional unsecured debt to the prejudice of creditors holding unsecured claims. Here, the precise amount of the outstanding accounts receivable as of November 20, 1986, was established and the precise amount of proceeds for accounts receivable generated after November 20, 1986 was established. The Bank improved its secured position in the receivables by $16,189.47 after November 20, 1986 and received a voluntary payment of $6,447.02 on December 22, 1986. Since the debtors were insolvent, the only source of assets to generate the new receivables was the insolvent estate of the debtors, to the prejudice of holders of unsecured claims.

The Bank cites *In re Carper*, 63 B.R. 582, 15 CBC 2d 496, (Bankr.W.D.Va.1986). But there, the secured party did not improve its overall position; its lien on the milk was converted to a lien on the proceeds. In *Wear v. Buffalo Bank (In re 4–S Corp.)*, 69 B.R. 499 (Bankr.W.D.Mo. 1987), there was no preference because it was only proved that the secured party had a lien on inventory and receivables which attached at an unknown time, and the foreclosure was within the 90 day preference period.

Under § 547(e)(3), the transfer by the debtor to the Bank of a lien on an account receivable of the debtors arises only when the debtor acquired the rights to the account. The lien could not be perfected until the debtors' right to payment of the account arose, and the right to payment did not arise until the work was performed. No work—no account receivable—no lien. Hence, the Bank's lien on each account of the debtors was perfected only at the time the debtors performed the work. To the extent that an account receivable was generated by work performed by the debtors after November 20, 1986, the Bank's lien was perfected within the preference period and is voidable if it improved the Bank's position. See *Northwest Electric Co. v. A.P. O'Horo (In re Northwest Electric Co.)*, 84 B.R. 400, 12 CBC 2nd 1029 (Bankr. W.D.Pa.1988).

The trustee also argued that the Bank is liable under Bankruptcy Code § 553(b) since the Bank set off the debtors' bank account shortly before bankruptcy to apply against the Bank's claim. However, the funds in the account were the proceeds of accounts receivable, all of which are treated herein in considering the Bank's improvement in position during the 90 day preference period, so there is no set off issue.

The following order is in accordance with the foregoing, and also disposes of peripheral issues which need no discussion.

### ORDER

After notice and hearing, it is ORDERED as follows:

1. McDowell National Bank received the following payments:

(a) Total received after November 20, 1986 (i.e., the 90th day before the date of bankruptcy, which was February 17, 1987) from accounts due to debtors:

| | |
|---|---|
| $19,278.86 | |
| 18,996.06 | |
| 4,200.00 | |
| 548.39 | |
| 124.13 | |
| 567.67 | |
| 2,259.18 | $45,974.29 |

(b) Voluntary payment made by debtors on December 22, 1986, which we hold cannot be deemed a payment in the ordinary course under § 547(c)(2):

| | |
|---|---|
| | 6,447.02 |
| Sub-total | $52,421.31 |

(c) But said payments are only preferences to the extent they exceeded the Bank's interest in the debtors' receivables on November 20, 1986, which was $29,784.83:

| Less | 29,784.83 |
|------|-----------|
| Net | $22,636.48 |

(d) The preference amount avoidable under § 547 received by the Bank, and the amount which Bank is hereby ordered to pay over to the trustee is the amount of $22,636.48.

2. The trustee shall pay over to McDowell National Bank the insurance proceeds resulting from the damage to a certain liened trailer in the amount of $678.02.

3. The contract work performed by the new partnership entity, which was the assignee of the debtors' contract with the Postal Service, which work was performed after February 17, 1987, the date of bankruptcy, was not subject to the lien of McDowell National Bank, and the $36,098.54, more or less, received by the trustee and turned over to the new contracting entity, is free of any claim by McDowell National Bank.