In re NORTHEASTERN CONTRACTING CO., Debtor.

John J. O'Neil, Jr., Trustee, Plaintiff,

v.

Orix Credit Alliance, Inc., Salvatore J. Marino Sr., and Salvatore J. Marino Jr., Defendants.

No. 3:96CV2208 JBA.
Bankruptcy No. 93–21878.
Adversary No. 95–2154.

United States District Court, D. Connecticut.

Feb. 3, 1999.

G. Eric Brunstad, Jr., Hebb & Gitlin, Hartford, CT, for Orix Credit Alliance, Inc.

George M. Purtill, Purtill, Purtill & Pfeffer, Glastonbury, CT, R. Richard Croce, Connecticut Student Loan Foundation, Rocky Hill, CT, for John J. O'Neil, Jr.

## INTRODUCTION

ARTERTON, District Judge.

Trustee John O'Neil, plaintiff-appellee in this case, filed a preference action against creditor Orix Credit Alliance in 1995. At issue were two checks for $6,000 that Debtor Northeastern Contracting Company (Northeastern) transferred to Orix. The checks were paid to Northeastern for construction services rendered under a contract with Industrial Construction Company (ICCI) (a third party). The bankruptcy court concluded that these payments were avoidable preferences that could be recovered pursuant to 11 U.S.C. § 547(b) and § 550. Orix has appealed on numerous grounds.

## BACKGROUND

Orix (Creditor) entered into a financing agreement with Northeastern (Debtor) to enable Northeastern to acquire equipment. The parties formed the agreement approximately nineteen months before the bankruptcy proceedings began. In connection with the loan, "Orix acquired a security interest in, among other things, all of the Debtor's accounts receivable, as well as the proceeds thereof" (Stipl. Facts and Ex. For Trial Preference Action, R. 27, p. 3, pp 16–7). By Note in 1988 and by agreement in 1991, the security interest was granted. Orix filed financial statements in 1988 and 1991. By August 8, 1991 at the latest, Orix acquired a perfected security interest in Northeastern's accounts receivable.

In addition, Salvatore Marino Sr. (principal shareholder in Northeastern) and Salvatore Marino Jr. (President of Northeastern) gave personal guaranties on the loans. They obligated themselves to pay the debt. In these agreements, both parties waived in some respect their payment rights against Northeastern. Marino Jr.'s agreement contained different language from Marino Sr.'s agreement.

On October 21, 1991, Northeastern executed the Contract with ICCI to render services on The Gaylord Hospital project. On August 25, 1992 and September 17, 1992, ICCI paid Northeastern two payments of $6,000 each. The checks were made payable to "Northeastern and Orix Credit Alliance." These payments were 9 months and 8 months prior to the involuntary bankruptcy petition filed on May 17, 1993 by Northeastern's creditors. In 1995, O'Neil filed this preference action against Orix.

## BANKRUPTCY COURT'S DECISION

Judge Krechevsky of the Bankruptcy Court found that the two checks transferred to Orix were avoidable under § 547. Title 11 of the U.S.Code § 547(b) provides:

The trustee may avoid any transfer of an interest of the debtor in the property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the day of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enable such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of the title.

11 U.S.C. § 547(b) (1993).[1]

As a threshold matter, the bankruptcy court found that the relevant time period prior to the bankruptcy petition was the one year period applicable to "insider" creditors. *See* 11 U.S.C. § 547(b)(4)(B). The court applied the *Deprizio* doctrine to determine that this one-year period would apply to Orix.[2] The *Deprizio* doctrine states that a trustee may recover a transfer from a non-insider creditor made more than 90 days but less than one year prior to the bankruptcy petition filing if that transfer benefitted an insider creditor. Orix itself was not an insider creditor. However, two guarantors of the loan, Marino, Sr. and Marino, Jr. were insiders. As guarantors they had a right to payment from Northeastern that would come to fruition when they paid Orix. Correspondingly, a payment to Orix from Northeastern could potentially benefit them because they would be relieved of some portion of their obligation under the guarantee agreement. Under the *Deprizio* doctrine, if either insider benefitted from the transfer pursuant to 547(b), then the trustee could recover against the transferee pursuant to § 550.

Orix argued that neither of the Marinos was a creditor at all because each had waived his subrogation rights. In essence, each had waived any right against North-

eastern in the event that he was required to repay the debt to Orix. The court agreed that Marino Sr. had waived any rights of subrogation with the result that he was not a creditor. However, the court found that Marino Jr. had not waived his rights, but had merely postponed his claims until non-insider creditors were paid. Thus, Marino Jr. was a creditor for purposes of the *Deprizio* doctrine. The court next examined whether Marino Jr. was benefitted from the transfer to Orix. The court found that the transfers conferred a cognizable benefit upon Marino Jr.

After finding that under *Deprizio* the relevant period of potential avoidance was one year, the court next turned to the substance of the transfers. The court recognized that Orix's security agreement with Northeastern granted Orix a perfected security interest in any and all Northeastern's accounts receivable acquired. However, Orix's security interest could not attach to Northeastern's property until Northeastern acquired rights to that property. For purposes of the preference doctrine, "a transfer is not made until the debtor has acquired rights in the property transferred." 11 U.S.C. § 547(e)(5).

Viewing Orix's security interest as Northeastern's accounts receivable, the court found that Northeastern did not "acquire rights in the property transferred" until it performed its duties under the Contract and acquired a right to payment.

1. In Appellee's brief, O'Neil states that the first four elements of the preference analysis have been stipulated and that the real issue is the fifth element. (Br. of Appellee, at pp. 4–5). On the contrary, it seems that the fourth element (when the transfer occurred) is a hotly contested issue. First, the application of the *Deprizio* doctrine determines whether 90 days or one year is the relevant time period. In addition, the issue of when Orix's security interest "attached" to Northeastern's property will also determine whether the transfer occurred within the relevant time period. The fifth element (whether the creditor obtained "more" than it would in a Chapter 7 proceeding) also seems to hinge on when Northeastern acquired rights in the

Contract or in the payments made pursuant to the Contract.

2. The court observed that the application of the *Deprizio* doctrine was an issue the Second Circuit had not yet addressed. *See O'Neil v. John Deere Indus. Equip.*, 182 B.R. 673, 674 (Bankr.D.Conn.1995). In addition, the *Deprizio* line of cases was effectively overruled by the 1994 congressional amendments to the Bankruptcy Act. However, the 1994 Amendments do not apply to cases commenced prior to October 22, 1994. The bankruptcy court concluded that the language of sections 547(b) and 550 prior to the 1994 amendments supported the *Deprizio* reasoning.

Orix's collateral, the accounts receivable, did not come into existence until Northeastern earned a right to payment under the contract. The court then explained that the parties "stipulated" that the dates of performance "merged" with the dates of payment and endorsement of the checks. The payments were earned at or shortly before the time of payment. Northeastern earned its right to payment and Orix's perfected security interest attached to the payments within one year of the bankruptcy filing. As a result, the transfers were avoidable.

## STANDARD OF REVIEW

Bankruptcy Rule 8013 provides that "[o]n appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings. Findings of fact . . . shall not be set aside unless clearly erroneous." [3] As one court has explained, "[t]he district court's review of questions of law in a bankruptcy appeal is plenary. However, findings of fact of the bankruptcy court will not be set aside unless 'clearly erroneous.'" *In re Paolella & Sons, Inc.*, 161 B.R. 107, 111 (E.D.Pa.1993); *see also New York State Elec. & Gas Corp. v. McMahon*, 129 F.3d 93, 95 (2d Cir.1997) (court of appeals reviews "district court's conclusions of law de novo and bankruptcy court's findings of fact under a clearly erroneous standard."); *In re Merchants Grain, Inc.*, 93 F.3d 1347, 1351 (7th Cir. 1996) ("We review de novo both the bankruptcy court's and the district court's conclusions of law. We accept the bankruptcy court's conclusions of fact unless they are clearly erroneous."); *In re AEG Acquisition Corp.*, 161 B.R. 50, 54 (9th Cir. BAP 1993) (issues of law reviewed under de novo standard).

## DISCUSSION

As an initial matter, Orix argues that the *Deprizio* doctrine should not be adopted in this circuit or applied in this or any other case. (Br. of Appellant, at pp. 44–49). The doctrine has been greatly criticized in case law and it was overruled by congressional enactment in 1994. O'Neil argues that *Deprizio* is still good law. (Br. of Appellee, at p. 23). The application of *Deprizio* is the threshold and potentially dispositive issue. If *Deprizio* is not applied in this case, a ninety-day period will apply and then the transfers at issue cannot be preferences because no transaction occurred within the ninety-day period.

Congress overruled the *Deprizio* reasoning in 1994. *See* 11 U.S.C. § 550 (West Supp.1997) (providing explicitly that trustee cannot recover from non-insider creditor outside of 90–day period). However, the 1994 amendments do not apply to cases commenced prior to October 22, 1994, as this case was.

Both parties' discussions of the *Deprizio* doctrine are accurate. (Br. of Appellant, at pp. 44–49; Br. of Appellee, at p. 23). As O'Neil maintains, every court of appeals to consider the application of the *Deprizio* doctrine has adopted it. *See Galloway v. First Alabama Bank*, 30 F.3d 1438, 1441 (11th Cir.1994); *Official Unsecured Creditors Comm. v. United States Nat'l Bank*, 2 F.3d 977 (9th Cir.1993); *Southmark Corp. v. Southmark Personal Storage, Inc.*, 993 F.2d 117, 120 (5th Cir. 1993); *In re Erin Food Svcs.*, 980 F.2d 792, 798–99 (1st Cir.1992); *T.B. Westex Foods, Inc. v. FDIC*, 950 F.2d 1187 (5th Cir.1992); *Ray v. City Bank & Trust Co.*, 899 F.2d 1490 (6th Cir.1990); *Manufacturers Hanover Leasing Corp. v. Lowrey*, 892

---

**3.** A finding is "clearly erroneous" when, "although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 393–94, 68 S.Ct. 525, 92 L.Ed.

746 (1948); *see also Concrete Pipe & Prod. v. Construction Laborers Pen.*, 508 U.S. 602, 623, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (same); *SNC S.L.B. v. M/V Newark Bay*, 111 F.3d 243, 247 (2d Cir.1997) (same).

F.2d 850 (10th Cir.1989). However, courts have not always adopted the doctrine whole-heartedly. One court stated, "we assume, without deciding, that *Deprizio* correctly interprets the legislative directives to be applied to the present claim." *Erin Food,* 980 F.2d at 799. Moreover, all of these cases were decided prior to the passage of the congressional amendments.

As Orix correctly notes, a number of courts in this circuit have questioned or rejected the *Deprizio* doctrine. *See, e.g., In re Frank Santora Equip. Corp.,* 213 B.R. 420, 424 (E.D.N.Y.1997); *In re Wedtech Corp.,* 187 B.R. 105, 110 (S.D.N.Y. 1995); *In re Artha Management, Inc. (Pereira v. Lehigh Sav. Bank),* 174 B.R. 671, 677 (Bankr.S.D.N.Y.1994); *Weiskopf v. New York Job Devpmt. Auth.,* 145 B.R. 3, 4 (Bankr.N.D.N.Y.1992). The principal concern expressed by these courts is that the *Deprizio* doctrine penalizes more cautious creditors and causes a "chilling effect" on a company's ability to obtain credit with respect to corporate loans guaranteed by insiders. *See In re Frank Santora,* 213 B.R. at 424 (citations omitted).

As the bankruptcy court itself noted, there is no controlling case law in this circuit. However, the code that existed prior to the congressional amendments lent itself to the interpretation enunciated in *Deprizio.* Congress has since clarified its position, but also made clear that its amendments would not apply to cases filed prior to October 22, 1994. Thus, policy concerns notwithstanding, this Court will apply *Deprizio* as it represents the reasonable interpretation of the bankruptcy code as it existed at the time of the transfers.

■ Orix next contests the applicability of the *Deprizio* doctrine and the insider provision to the facts of this case. (Br. of Appellant, at pp. 41–44). Orix argues that both Marinos waived any payment rights against Northeastern such that they were not "creditors" in relationship to Northeastern. In addition, even if Marino Jr. were a creditor, he inured no "tangible benefit" from the payment to Orix because he has no assets. (Br. of Appellant, at pp. 42–44). Lastly, under *Deprizio,* the preference can generally be recovered from the insider, but not the non-insider. (Br. of Appellant, at p. 44).

Appellant Orix's arguments to this Court simply restate arguments made to and rejected by the bankruptcy court. In particular, Orix's extended discussion of *Erin Food* in its brief (and in its numerous filings before the bankruptcy court) is misplaced. Orix concedes that "the facts in this case are somewhat different," but argues that the principle of *Erin Food* "applies with equal force." (Br. of Appellant, at p. 43.) On the contrary, it seems that the outcome in *Erin Food* turned on the fact that the insider guarantor in that case had guaranteed less than the full amount of the debt. *See Erin Food Svcs., Inc.,* 980 F.2d 792, 801 (1st Cir.1992). The court in *Erin Food* held that an insider creditor must receive a "tangible benefit." However, the court was distinguishing monetary benefits from "unquantifiable benefits" such as a deferral of bankruptcy proceedings. *See id.* at 799. The court later explained that "[s]ince the non-insider creditor in a trilateral preference receives direct payment on its antecedent debt, the insider guarantor will realize a corresponding dollar-for-dollar reduction in the amount of his contingent liability." *Id.* at 801. *Erin Food* provides little support for Orix's position.

Whether a creditor received a quantifiable benefit is a question of fact, *id.* at 801; thus, the bankruptcy court's determination is subject to the clearly erroneous standard of review. The bankruptcy court's application of *Deprizio* to this case was sound and presents no clear error.

■ The remaining contested issue in this appeal is whether the transfers occurred inside or outside the one-year preference period. Presumably, both parties would agree that Orix's duly perfected security interest, standing alone, could not

provide defense to a preference action. The security interest constitutes nothing more than a "bare anticipatory right." Orix's security interest must "attach" to the asset or account. The bankruptcy code explicitly provides that a "transfer" for preference purposes does not occur until the debtor acquires "rights" in the property. 11 U.S.C. § 547(e)(5). Thus, the security interest must be perfected and "attach" to property outside the preference period in order for the transfer to be unavoidable.

The determinative issue in this appeal is when did Orix's security interest attach to these payments. In order to make this determination, it is essential to consider what type of security interest Orix claims in Northeastern's property, that is either in debtor's accounts receivable or in the debtor's contract rights or other intangibles.

On the one hand, the bankruptcy court, presumably relying upon the parties' stipulations that "Orix acquired a security interest in, among other things, all of the Debtor's account receivable, as well as the proceeds thereof" and the checks "represent the proceeds from accounts receivable generated by the Debtor for work" (Stipl. Facts and Ex. for Trial and Preference Action, R. 27, pp. 16, 17), and Orix's various submissions to the bankruptcy court including its Memorandum of Law in Support of it Cross–Motion for Summary Judgment (R. 17, p. 3) and supporting affidavit by Debora Ekross (Ekross Aff., R. 20, pp. 14) and Salvatore Marino (Marino Aff., R. 19, pp. 15) reiterate Orix's original argument that the checks represent proceeds from the debtor's accounts receivable which constituted Orix's collateral, solely considered the checks in terms of Orix's security interest in Northeastern's accounts receivable.[4] However, after the hearing and in response to the Trustee's challenge to Orix's security interest first raised in its post trial memorandum, Orix altered its basis for its claimed security interest in the checks and for the first time asserted that its prior security agreements extended to among other things Northeastern's after acquired contract rights and general intangibles, which included the ICCI contract. (Mem. of Law in Opp'n to Reply Br. of Pl., Inc., R. 31, p. 2). In its post trial memorandum, Orix amended its earlier stipulated position that its security interest included the two checks as accounts receivable, but instead argued they constituted the proceeds from its existing security interest in the ICCI contract under the security agreement which it claims granted it a security interest in Northeastern's after acquired contract rights or general intangibles. *Id.* It is based upon this construction of its security interest that Orix challenges the Bankruptcy Court's determination that its security interest only attached once these payments became accounts receivable.

In this case, it is not disputed that Northeastern created the contract with ICCI well outside the one-year preference period. It is also stipulated that the actual payments from ICCI under the contract occurred during the one year preference period. Presumably, Northeastern performed its obligations under the contract at some time between the point of contract formation and the time payments were made.[5] Thus, the crucial inquiry is what is the "property" (the contract itself or the accounts generated from this contract) and when did Northeastern acquire rights in

---

4. Trustee O'Neil has characterized this security interest as a "floating lien" that is only excepted from preference analysis under section 547(c)(5). (Hearing Transcript, R. 29, at p. 8–9). In contrast, Orix has characterized its status as that of a undersecured creditor; thus, its status renders the transfers nonpreferential under 547(b). (Hearing Transcript, R. 29, at p. 9).

5. Orix maintains, however, that even in the event that Contract performance was the key event, O'Neil has not yet proven whether the contractual obligations were actually performed inside or outside the one-year preference period.

that property (at the moment of contract formation or at the time of performance under the contract) such that Orix's duly perfected security interest could "attach."

Orix maintains that the two payments were proceeds of its collateral on a preexisting security interest in Northeastern's contract with ICCI since it had perfected a security interest in Northeast's after-acquired contract rights and general intangibles based upon its earlier security agreements (Br. of Appellant, at pp. 17–21). By granting Orix a security interest in Northeast's after-acquired contract rights and intangibles (by Note in 1988 and agreement in 1991), Orix asserts it acquired a security interest in among other things any and all of Northeastern's contracts. Absent any contracts, this was a mere anticipatory interest. However, when Northeastern entered into its contract with ICCI, Orix's security interest "attached" to the Contract and the Contract became Orix's collateral.[6] Orix's argument hinges on the premise that it had a security interest in Northeast's after acquired contracts and therefore contract creation was the event that constituted transfer of the interest of the debtor in the property and that payment on the contract was merely cash proceeds. Orix argues that a payment to a secured creditor from its own collateral is not subject to avoidance. As a secured

creditor, Orix claims entitlement to these proceeds regardless of when the payments were made. As soon as Northeastern made its agreement with ICCI (more than one year before bankruptcy proceedings began), Orix maintains that its security interest attached. The avoidance provisions are designed to prevent "preferences" and in this case, Orix asserts that it did not receive one because it was in no better position than it would have been in a Chapter 7 bankruptcy proceeding due to its preexisting security interest.

However, the bankruptcy court's decision does not indicate whether it considered Orix's claimed security interest in the ICCI contract itself as a contract right or general intangible and only speaks of Orix's security interest as one in Northeast's accounts receivable. The bankruptcy court assumed that Orix's security interest was only in the debtor's accounts receivable in concluding that performance of the contract was the event that would constitute transfer of the property. Based on that premise of Orix's security interest in the accounts receivable, the court found that the transfers in this case occurred within the one year period and were therefore avoidable as a preference. (Br. of Appellee, at pp. 5–7, 10–15). O'Neil further argues that under the "betterment" test,[7] the "greater percentage" test,[8] and

---

**6.** Questions of equitable and legal property interests are governed by state law. *See In re Kelton Motors*, 97 F.3d 22, 25 (2d Cir.1996) ("We determine what constitutes a legal or equitable interest by looking to state law."); *see also In re Merchants Grain*, 93 F.3d 1347, 1351 (7th Cir.1996) ("A lien is a property right, and the [Bankruptcy] Code looks to state law to determine the extent of that interest."). Orix cites two Connecticut provisions. Under C.G.S. § 42a–9–306, Orix's agreement with Northeastern created a "continuously perfected security interest." This interest would attach as soon as Northeastern possessed any interest in property. In addition, C.G.S. § 42a–9–203(1)(c) (like 11 U.S.C. § 547(e)(3)) provides that a creditor's lien attaches when the debtor acquires rights in the collateral. (Br. of Appellant, at pp. 21–24). However, as the ensuing discussion will demonstrate, these state provisions, like the bank-

ruptcy code, still leave open the question of what it means to "acquire rights" in a particular thing such as a Contract or a payment.

**7.** In the realm of transfers related to receivables, the transferee must show that it has not received "betterment." (Br. of Appellee, at p. 8). Orix has stipulated that it was an undersecured creditor (Rec. 27). For an undersecured creditor, "betterment" occurs when during the preference period, the amount of collateral subject to the creditor's lien increases or the balance of the debt decreases.

**8.** According to O'Neil, Orix also fails the "greater percentage test" with regard to the transfer. (Br. of Appellee, at p. 9). Because Orix did not advance additional funds or release capital upon receiving this payment, on the "application" side of this test, the pay-

the "547(c)" test,[9] the trustee can demonstrate that creditor received more than it would have received in a Chapter 7 liquidation.[10]   (Br. of Appellee, at pp. 7–10).

As both parties confirmed at oral argument, under state law and the various tests under the bankruptcy code, resolution of this case hinges on determining whether creation or performance of the contract constituted transfer for purposes of the bankruptcy code.  If Orix's security interest extended to the ICCI contract itself, then creation of the contract would be the relevant date.  However, if Orix's security interest was in Northeastern's account receivables, the relevant date for determining when the debtor had rights in the property would be the date of performance since before that date, no account receivable would exist.

The bankruptcy court, in only considering Orix's security interest in terms of Northeastern's account receivables, determined that the key event was contract performance.  Under this view, the property transferred was payment that Northeastern acquired when it *performed* its obligations under the contract.  (Memorandum of Decision, R. 32, at p. 5–6).  The court relied on two cases, *Northwest Elec. Co. of Ohio v. A.P. O'Horo Co.*, 84 B.R. 400 (Bankr.W.D.Pa.1988)  and  *Graban v. McDowell Nat'l Bank*, 96 B.R. 602 (Bankr. W.D.Pa.1989).   Both cases hold that the creditor's perfected security interest attaches to accounts receivable on the date that the debtor renders performance and thus earns the payments.

In *Northwest*, the debtor assigned its rights to payment for future work to be performed for a third party.  The creditor maintained that at the moment of execution of the assignment, title was transferred.  The court rejected the creditor's argument holding that if the right to payment came into being during the preference period, then the transfer was avoidable.  As the court explained, "the key element to be considered in giving effect to the letter and the spirit of the bankruptcy law of preference avoidance is to determine whether the thing assigned, transferred or liened, was in existence at the time of the transfer outside of the preference period."  84 B.R. at 404.[11]  The court resolved that the thing transferred must have been the payments earned by performance rather than the contract itself.  The court rejected the contention that the assignment of the account effected a change in ownership.  It explained,

---

ment was preferential.  On the "source" side, the payment arose during the preference period because this was a "progress payment."

9.  O'Neil argues that Orix fails to succeed in the 547(c)(5) defense which applies to an after-acquired security interest with a floating lien.  O'Neil contends that Orix did not have a security interest in the account receivables more than one year from the date of the bankruptcy ruling because the receivables did not exist.  The accounts receivable came into existence when Northeastern *performed* the contract which is the "same" time it received the money under a "progress payment" system.  Thus, in O'Neil's opinion, Orix did not acquire rights in the collateral until Northeastern's right to the receivable occurred.

10.  The fifth element of a preference action parallels the 547(c)(5) defense.  The merits of these claims/defenses were given little attention by the bankruptcy court; this omission hinders this Court's ability to review the arguments.   Nonetheless,  O'Neil's  arguments seem to hinge on when rights to the Contract and/or  payments  were  transferred  from Northeastern to Orix.

11.  In *Northwest*, the court also addressed the question of whether a perfected security interest with after-acquired property differed in any way from a contract that was created and later assigned through an agreement.  In other words, the court considered whether it was relevant if the contract came first or the security interest/assignment came first: "How, then, are these *assignments different from* perfected security agreements under the UCC? They are not different.  They operate exactly like security agreements.  Section 547(e)(3) recognizes that assignments for security purposes, like after-acquired property clauses in security agreements, effect a transfer of the debtor's property to the creditor at the time the debtor acquires an interest in the property."  84 B.R. at 405.

no party intended either [creditor] to collect more under the assignment than the debt due the assignee; no creditor under any of these assignments purchased the absolute right to receive all future payments at the time of the assignment. The assignments were for security purposes; they merely created a lien in the thing (i.e., the debtor's right to receive payments) as soon as it came into existence. If the debts were satisfied, the creditors would have no right to any of the future payments under the assignment.

84 B.R. at 405. The court amplified its reasoning:

[I]f O'Horo and Edison had taken an assignment of the debtor's contract in toto, that is if they had agreed to provide Northwest's performance as well as taking the proceeds from the performance, if they had taken the burdens with the benefits, no one could complain. But here, all the debtor had was a contract with the owner, which permitted the debtor to perform work ... and be paid for the same.... It is inappropriate for these two creditors to say that they had rights, based on assignments executed in May and July, to the proceeds of work to be performed by the debtor in September and October, when that performance diminished the debtor's estate and adversely impacted upon other creditors.

*Id.* at 407. The same judge reached the same result in *Graban.*

*Northwest* presents a sound rationale why performance must dictate the time of transfer if the security interest is in the accounts receivable. Orix maintains, however, that in following *Northwest* the bankruptcy court failed to follow its own previous decision and binding precedent in this Circuit reaching the opposite conclusion. *See Beck v. International Harvester Credit Corp.,* 29 B.R. 907 (Bankr.D.Conn.1983); *Rockmore v. Lehman,* 129 F.2d 892 (2d Cir.1942). (Br. of Appellant, at pp. 24–33). Those cases establish that a transfer of a

security interest in a contract or general intangible occurs once a creditor has a perfected security interest in an executory contract. Orix argues that *Beck* and *Rockmore* are indistinguishable from this case.

*Beck* would seem analogous to the case at hand if Orix did indeed have a security interest in the ICCI contract. In *Beck,* the trustee attempted to avoid payments made from the debtor to the creditor during the preference period. The debtor assigned its contract rights outside the preference period; however, the debtor did not earn payment under the contract through performance until sometime during the preference period. In that case, Judge Krechevsky found that the payments were unavoidable. The court highlighted the fact that "[t]he ... contract was an existing executory contract when the debtor assigned its right to payment." Thus, the transfer occurred with assignment and any payment under the contract was unavoidable.

*Beck* relied upon *Rockmore v. Lehman,* 129 F.2d 892 (2d Cir.1942), which also held unavoidable certain payments made pursuant to an assignment of contract rights that were made during the preference period. The key event was the moment of assignment, at which time a transfer would be deemed made. The court did distinguish however, that "[t]he [payments] were not made upon a mere agreement to assign rights which might arise in the future and did not exist at the time contracts were made, but upon assignments of definite contractual obligations." *Id.* at 892. The bankruptcy court in *Beck* reasoned that "Section 547(e)(3) was a legislative response to such decisions as *DuBay v. Williams* [417 F.2d 1277 (9th Cir.1969)] and *Grain Merchants of Indiana [v. Union Bank & Sav. Co.,* 408 F.2d 209 (7th Cir.1969)].* Both *DuBay* and *Grain Merchants* dealt with the effect of after-acquired property clauses in security agreements and concluded that a bankruptcy trustee could not avoid the creditor's lien on collateral acquired by the debtor during

the preference period." 29 B.R. at 911. The concern was that security agreements would be used to reach property, including contracts, formed or created during the preference period. However, where the contract or account was formed outside the preference period, the concerns addressed by Section 547(e)(3) are not raised. As a result, the court in *Beck* concluded that Section 547(e)(3) did not disturb the holding in *Rockmore* and the transfers were unavoidable.

A few considerations make it difficult to determine whether the bankruptcy court even considered (and then rejected) Orix's changed claim of a security interest in the ICCI contract or whether it limited its consideration of the type of security interest to the parties' stipulation limiting Orix's security interest to the accounts receivable (Stipl. Facts and Ex. For Trial of Preference Action, R. 27, pp. 16, 17), which would ordinarily limit Orix's argument. The bankruptcy court's opinion does not appear to address or consider at all whether Orix's claimed security interest in the contract itself would change the result. Rather than conjecture about whether the bankruptcy court considered and rejected the merits of Orix's claim of a security interest in the contract (such that the check constitutes cash proceeds) or instead found such a claim precluded by Orix's earlier stipulated position that the checks constituted proceeds from debtor's accounts receivable to which Orix had a security interest, this Court will remand the case for such clarification or further consideration of Orix's claimed security interest in the ICCI contract under its security agreements such that these payments constitute cash proceeds from its preexisting security interest. The security agreements contained in the record are of such small type or poor copy quality that the Court can not decipher what types of collateral are covered by the security inter-

est, (*see e.g.*, Security Agreement, dated August 2, 1991, R. 27, Exh. D), nor did either party fully address this issue. Given this record, the Court views the more prudent course to vacate the Bankruptcy Court's decision and remand the case to the Bankruptcy Court for further proceedings.

If the Bankruptcy Court determines that Orix did have a security interest in the ICCI contract, a review of the few cases to discuss this issue and the commentary persuades this Court that such a scenario would deserve the same treatment as that of *Rockmore* and *Beck*. Contract creation and the existence of a security agreement/assignment constitute transfer. So long as the security agreement is perfected or assignment occurs and the contract is formed outside the preference period, the payment of the proceeds from the contract are not avoidable as preferences.[12]

There is a second reason for remand. Even if the bankruptcy court concludes on remand that Orix's security interest was in the accounts receivable and that performance constituted transfer, the record contains no finding of fact as to when the critical performance occurred. The court concluded that the parties "stipulated" that the dates of performance and payment were "merged." Orix disagrees. It maintains that it never stipulated to this fact. (Br. of Appellant, at pp. 33–35). In contrast, O'Neil argued that "it must be presumed that this stream of payments was earned at (or shortly before) the time of payment." (Reply Br. of Pl., R. 30, at pp. 1–2.).

A reviewing court may find the lower court's finding to be "clearly erroneous" when it is certain that a mistake has been made. *See SNC S.L.B. v. M/V Newark Bay*, 111 F.3d 243, 247 (2d Cir.1997). Thus, it is not only the factual finding itself that may give rise to reversal, but the

---

12. It is irrelevant whether the contract or security agreement/assignment occurs first, as

the court in *Northwest* aptly reasoned.

court's method of arriving at that fact. In this case, the court appears to have accepted O'Neil's "presumption" that the time of performance and time of payment were "merged," which he advanced in a post-hearing brief, (Reply Br. of Pl., R. 30, at p. 2), and which went unaddressed in Orix's reply leaving the Bankruptcy Court with the apparently erroneous perception of a stipulation. (Mem. Law in Opp'n to Reply Br. of Pl., R. 31). It is debatable whether Orix was ever presented with the trustee's contention in a fashion that should render Orix's silence on the matter a binding stipulation. In light of these circumstances, if performance were the key event, remand would be appropriate for determination of when performance occurred.

Accordingly, the judgment of the bankruptcy court is VACATED for further proceedings on Orix's alternate argument (or finding of waiver by stipulation) and factual determination of the performance date.

IT IS SO ORDERED.